JEROME C. FIELD *vs.* EDWIN S. ROOSA & others.

Worcester.    October 6, 1892. — May 19, 1893.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Equity — Landlord and Tenant — Mortgage of Personal Property — Use and Occupation — Storage.*

If a lessor, upon taking possession of the leased premises, during the term of the lease, finds thereon a stock of goods left there by a tenant, who has occupied under an arrangement with the lessee and has abandoned the premises, and the goods are subject to an unpaid mortgage and the mortgagee declines to take possession of the goods or to promise to pay the lessor for storing them, the latter cannot maintain a bill in equity against the tenant and the mortgagee to recover for use and occupation of the premises, and for storage of the goods.

FIELD, C. J.    The bill in this case was originally brought against Edwin S. Roosa and Albert K. Page, called in the bill Charles H. Paige, but the misnomer was cured by an amendment.    It appears from the master's report that the plaintiff had let the west store, No. 43 Pleasant Street in Worcester, to Lucius Merrifield, for a term of five years from April 24, 1889, with the right in the lessee to underlet but not to assign the lease.    On December 18, 1890, Merrifield, then being in possession of the store under this lease, sold the stock of musical instruments, etc. in the store to the defendant Roosa.    This stock was sold subject to a mortgage from Merrifield to F. H. Dewey for $1,400 and interest, on which there was due $1,430.    The mortgage contained a provision that the mortgagor, his representatives or assigns, should not attempt to sell or remove the stock from the store without the consent of the mortgagee in writing.    Merrifield also agreed with Roosa to assign the lease to him if the plaintiff would agree to take Roosa as a tenant. Roosa, as a part of the consideration for the sale of the stock, gave to Merrifield a deed of certain real estate, subject to two mortgages, the second of which was assigned to Albert K. Page. Page assigned this mortgage to Merrifield as a part of the consideration of the sale of the stock of goods to Roosa, and Roosa gave to Page a mortgage on the stock of goods subject to the mortgage to Dewey, and this mortgage also contained a pro-

vision against the removal of the stock from the store without the consent in writing of the mortgagee. Merrifield also gave to Roosa the key of the store and the possession of the stock, and offered to assign the lease if the plaintiff would accept Roosa as a tenant. Roosa, objecting to the form of the execution of the lease, did not request Merrifield to assign the lease to him, nor did the plaintiff ever consent to any assignment, or to accept Roosa as his tenant, and Merrifield did not underlet the store to Roosa. Roosa continued in the use and occupation of the store from December 18, 1890, to January 13, 1891, without any agreement with the plaintiff. During this use and occupation there were negotiations between the plaintiff and Roosa for a lease for a short term, but they came to nothing, and on January 10, 1891, Roosa " left the store locked, and, taking the key, went to his home in Newton." On January 12, 1891, the plaintiff entered the store through a door in the basement, changed the lock on the front door, made an agreement with Dewey " to keep the goods in the store for him until he should foreclose by a sale, or assign his mortgage "; and on January 15 notified Page that the store was closed, and, if he wanted the goods, " to come up, pay the storage, and take charge of the goods, otherwise they would be delivered to the first mortgagee." On the same day Roosa demanded of the plaintiff admission to the store, which the plaintiff refused.

On January 17, Roosa brought suit against the plaintiff and one Hannah Lamb, for a conversion of the goods, which suit is now pending. On January 26, Dewey assigned his mortgage to George R. Wheelock, who knew of the pendency of the suit for conversion, and on the same day the plaintiff notified Roosa to remove the goods left in the store and to surrender the key to him, which Roosa did not do; but it is not found that the plaintiff abandoned his claim for storage, and from the allegations of the bill it appears that he insisted on this claim. On March 2, 1891, which in the report of the master is set down as March 4, the bill was filed; on March 13, Wheelock was made a party defendant, and appeared on May 4, and answered that he had assigned the mortgage which had been assigned to him. It appeared that he had assigned it to Luke J. Page, and the master has found that this was done for the benefit of Albert K.

Page, the date of the assignment being April 23, 1891, and that Luke J. Page took the assignment with knowledge of the pendency of this bill in equity. This finding was subsequently confirmed by the master's supplemental report. Luke J. Page was made a party defendant, and answered the bill. Wheelock consented that the bill be taken for confessed against him, " but without costs or personal liability " to him. Roosa demurred to the bill. • The demurrer was overruled, and he appealed. No answer appears to have been filed by Albert K. Page. The supplemental report of the master was upon the issues raised between the plaintiff and Luke J. Page, and the master reported the evidence taken on those issues. The defendant Luke J. Page filed certain exceptions, and the case apparently came on to be heard on these exceptions, and on the pleadings and the two reports of the master. The bill was dismissed, and the plaintiff appealed.

On the papers before us, we are unable to see what right the plaintiff had to take possession of the store at the time he took possession. It does not appear that the lease to Merrifield had been surrendered, or that he took possession for breach of condition, or that the lease was upon condition. If it be assumed that the plaintiff rightfully took possession as against Merrifield, it does not appear that any of the defendants became the tenants of the plaintiff, and after he took possession none of them ever occupied the premises. The plaintiff therefore has no claim for rent against any of the defendants. As to the plaintiff's claim of a lien for the storage of the goods, Roosa never agreed with the plaintiff that he should have a lien. Without expressing any opinion upon the question whether the plaintiff is guilty of a conversion of the goods as against Roosa, the mere fact that the plaintiff on taking possession of the store found Roosa's goods there, and that he has since stored them, does not give him a lien on the goods. *Preston* v. *Neale*, 12 Gray, 222. If the plaintiff is entitled to recover of Roosa reasonable compensation for storage, as the master finds he is, he should have brought his action at law against Roosa, and attached Roosa's interest as mortgagor in the goods. But the object of this suit in equity, as stated in the plaintiff's brief, is to recover of Albert K. Page compensation for storage, and to reach in payment therefor his interest as

mortgagee of the goods, and it is contended that he is the owner of the first, as well as of the second mortgage. The bill as originally brought was to obtain a decree against Roosa and Albert K. Page, for use and occupation of the store, and for storage of the goods, and it prayed that the goods might be sold, subject to the first mortgage, but discharged of the second mortgage, for the satisfaction of this claim. If Dewey made an agreement with the plaintiff " to keep the goods in the store for him until he should foreclose by a sale, or assign his mortgage," as the master has found, this may be a valid agreement against Dewey; but he is not a party to this suit, and he assigned the mortgage before this suit was brought. It does not appear that Dewey ever took possession of the goods for breach of condition of his mortgage, or that it was understood between him and the plaintiff that the plaintiff should have a lien on his interest as first mortgagee, and the bill as originally filed shows that the plaintiff did not claim any lien on the interest of the first mortgagee. By an amendment to the bill, the plaintiff, after he learned that Dewey had assigned his mortgage, attempted to extend his claim, and he then averred that the goods were held " upon a lien agreed upon between said Dewey and the complainant while said Dewey held said first mortgage." But this claim is not supported by the findings of the master. Besides, we do not see how a mortgagee not in possession can give to another person a right to possession except by first taking possession under his mortgage, and there is no finding that Dewey ever attempted to take possession. There is no finding that Wheelock, Albert K. Page, or Luke J. Page ever took possession, or attempted to take possession, under either of the mortgages. There is no averment in the bill or any of the amendments that any of the defendants ever promised the plaintiff to pay him anything for the storage of the goods or for the use of his premises. There is some testimony that Wheelock did so promise the plaintiff, but the master has not so found, and Wheelock has conveyed to Luke J. Page all his interest in the property. There is also testimony that Albert K. Page, on June 15, 1891, after the bill was filed, requested the plaintiff to keep the property stored until some arrangement could be made; but Page denied this, and he testified that he had not attempted to take posses-

sion or to foreclose either mortgage. We are unable to find any facts in the master's report showing that at the time the bill was filed Albert K. Page was indebted to the plaintiff in any sum, for storage or for use and occupation, and the plaintiff must prevail, if at all, upon the cause of action existing when the bill was filed. The original bill proceeds on the ground that both Roosa and Albert K. Page refused to become responsible to the plaintiff for use and occupation ; that they abandoned the occupation and took away the key to prevent the plaintiff from attaching the property, and that after he took possession they refused to take away the goods and pay the storage. As a second mortgagee not in possession, Albert K. Page was not liable for the storage of the goods unless he made a promise to be liable, and this is not averred or found. We take the finding of the master, " that there is due said Field, the plaintiff, from said Edward S. Roosa and Albert K. Page, for storage of said property from December 18, 1891, to date of this report, at thè rate of $75.00 per month, the sum of $1,050.00," and also the finding "that the plaintiff is entitled to have the property sold for the satisfaction of his claim," to be conclusions of law, and we do not find that they are supported by the specific facts found by the master. A mortgagor of chattels cannot give a lien upon them as against a mortgagee, without the express or implied assent of the mortgagee. *Howes* v. *Newcomb*, 146 Mass. 76. *Lynde* v. *Parker*, 155 Mass. 481. If a landlord, on rightfully taking possession of his real property, finds himself involuntarily in possession of a stock of goods left by an outgoing tenant, and the goods are mortgaged for all they are worth, and the mortgagee declines to take possession or to promise to pay the landlord for storing them, it may be a proper question for the Legislature to consider, whether justice does not require that the landlord should have some remedy against the mortgagee or his interest in the goods, if the remedy against the mortgagor by suit and attachment is practically worthless ; but under the existing law, on the facts found, we are of opinion that this bill cannot be maintained.

*Decree affirmed.*

*W. S. B. Hopkins & W. A. Gile*, for the plaintiff.

*T. G. Kent*, for the defendants.