CONSTANCE S. KEITH *vs.* HENRY L. DE BUSSIGNEY
& another.

Suffolk.   November 13, 1900. — June 17, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
HAMMOND, & LORING, JJ.

*Conversion,* What constitutes.  *Bailment,* Right of bailee to terminate.  *Damages,*
After breach of contract, not to be unreasonably increased.  *Contract,* Implied.

If one, who takes a horse to keep and board for a certain period, having the use of
him as compensation, fails properly to use and feed him, this is not exercising
dominion over the horse adverse to the owner, so as to make the bailee liable
for a conversion, even if his acts are such as to make him liable for negligence
or breach of contract.

The owner of a horse, who has bailed him to another to use for a certain period in
return for his board and keeping, cannot refuse to receive back the horse at the
termination of the period on the ground that the bailee has injured the horse
by want of proper food and care and by over use.

The bailee of a horse who has had the use of him for his board and keeping for a
certain period, after the wrongful refusal of the owner to receive back the horse
at the termination of the period, cannot recover from the owner the amount of
the horse's board recovered from the bailee by a livery stable keeper with whom
he placed the horse after notifying the owner that he was about to do so at his
expense.   The bailee can recover only the loss or expense necessarily incurred
in ridding himself of the horse in a reasonable way, and he is bound to make
such disposition of the horse as will terminate the owner's liability for damages
or expenses as soon as he reasonably can.

One cannot be held liable on an implied contract to pay for that which he declined
to permit to be done on his account, except that when one refuses to perform an
obligation which the law imposes upon him, the law in some cases treats per-
formance by another as performance for him and implies a contract on his part
to pay for it.   Per KNOWLTON, J.

CONTRACT to recover the amount paid by the plaintiff to one
Andrews, a livery stable keeper, on a judgment obtained by him
against her in *Andrews* v. *Keith,* reported in 168 Mass. 558, with
a count on an account annexed to recover a reasonable amount
for the board of a horse from July 23, 1895, to February 6, 1896.
Writ dated January 20, 1898.

At the trial in the Superior Court, before *Bond,* J., the follow-
ing facts appeared: The defendants were husband and wife and
were the owners of the horse, which they delivered to the plain-
tiff under the following agreement, signed by both defendants:

"Memorandum of Agreement made this day of September the 17th, 1894, between C. S. Keith and Mr. and Mrs. Henry de Bussigney. Miss C. S. Keith hereby agrees to take one horse belonging to said Mr. and Mrs. de Bussigney to keep and board from the said above date to the first day of June, 1895, provided said horse is suitable for ordinary family use. Said horse at all times to be properly fed and cared for, and it is further agreed that the said C. S. Keith is to be in no way responsible for the safety of said horse except in case of neglect or abuse, and to report any sickness or trouble that may occur to its owners, Mr. and Mrs. Henry de Bussigney, within a reasonable time. Compensation to Miss C. S. Keith to be the use of said horse during the above specified time and none other. Sharon, September 17, 1894."

At the end of the term the plaintiff sent the horse back to the defendants, who refused to receive it, declaring that the plaintiff had injured it by want of proper food and care and by over use; and after some correspondence with the defendants the plaintiff on July 23, 1895, put the horse in the livery stable of Andrews, and notified the defendants that they would be responsible for its board. The defendants refused to be responsible for any expense whatever in keeping the horse and suggested that the plaintiff should kill it. Andrews kept the horse until February 6, 1896, and then brought action against the plaintiff for its keep, and recovered in *Andrews* v. *Keith*, mentioned above.

The defendants introduced evidence of one Richards, who was employed by the plaintiff and had charge of the horse under the plaintiff's direction, who testified to the use he had made of the horse in ploughing greensward and driving it with heavy loads to Boston on successive days.

The defendants excepted to the admission of the record of the suit of *Andrews* v. *Keith*, to the exclusion of evidence offered by the defendants in regard to the condition of the horse when left with the plaintiff and when offered back to the defendants, to the refusal of the judge to order a verdict for the defendants, and his refusal to give the following rulings:

1. The plaintiff, when she took the horse under the agreement, must keep within the terms of the bailment as set out in the

agreement.    If she violated its terms, and the horse was injured, she can have no action against the defendants for consequences that grew out of her violation of the agreement, and if the horse, by her putting it to service not contemplated in the agreement, depreciated in value, the defendants would be under no obligation to receive it at the end of the term of hiring, and no action could be maintained against them by the plaintiff for the care, custody or keeping of the horse, after the expiration of the time mentioned in the agreement.    2. One provision in the agreement on the part of the defendants is that the horse should be suitable for ordinary family use.    The plaintiff's use of the horse was, therefore, limited to that purpose, and as there was no agreement that it was suitable for any other purpose, if it was used for any other purpose, and through that use depreciated in value, although such use might be no harder or more severe than the family use would be, the defendants would be under no obligations to take it back, and no action could be maintained against them for its board or care, after the expiration of the time mentioned in the agreement.    3. The plaintiff, after the defendants refused to receive the horse, even if there was no fault on her part, and she had performed all the obligations imposed upon her by law or by the contract, should do with it as persons with ordinary experience and prudence would have done with it, having reference to its value and all other circumstances.    If the horse was of little value, the fact that the defendants refused to receive it would not justify the plaintiff in keeping or boarding it for a long time, or at a relatively great expense, either in her own stable or elsewhere.    She should, after a reasonable time, have taken further steps to determine what disposition should be made of the horse, or have taken means to dispose of it as she could have done under the statutes of this Commonwealth.

The judge refused so to instruct the jury, and stated to counsel that the only question for the jury to determine was what was a reasonable sum for the keeping of the horse after the time when the plaintiff offered to return it and the defendants refused to receive it back, which sum was thereupon agreed on by the parties.    Also, that the plaintiff could not recover the costs which she had been obliged to pay in the suit of *Andrews* v. *Keith.*    The judge also ruled that no evidence had been intro-

duced which showed any change in the title to the horse, to which counsel for the defendants assented.

The jury returned a verdict for the plaintiff for the amount agreed ; and the defendants alleged exceptions.

The case was submitted on briefs at the sitting of the court in November, 1900, and afterwards was submitted on briefs to all the justices.

*T. E. Grover*, for the defendants.

*F. J. Stimson, L. M. Stockton & F. J. Macleod*, for the plaintiff.

KNOWLTON, J.   The evidence introduced and offered had no tendency to prove a conversion of the horse by the plaintiff.   It went no further than to show that the horse had been used in ploughing greensward and in drawing heavy loads to Boston, and that it was not in good condition when the plaintiff endeavored to return it.   Even if a jury might have found from the evidence that the plaintiff had not properly used and fed the horse, they could not have found that she had exercised dominion over it adverse to the defendants' rights, in such a way as to make her liable for a conversion of it.   At most it would only have warranted a finding of negligence or breach of contract on the part of the plaintiff, for which she was liable in damages.

The horse remained the property of the defendants, and it was their duty to receive it when the plaintiff brought it back.   On the issue of liability the evidence was rightly excluded, and the first two of the defendants' requests for instructions were rightly refused.

The third request was as follows : " The plaintiff, after the defendants refused to receive the horse, even if there was no fault on her part and she had performed all the obligations imposed on her by law or by the contract, should do with it as persons with ordinary experience and prudence would have done with it, having reference to its value and all other circumstances. If the horse was of little value, the fact that the defendants refused to receive it would not justify the plaintiff in keeping or boarding it for a long time, or at a relatively great expense, either in her own stable or elsewhere.   She should, after a reasonable time, have taken further steps to determine what disposition should be made of the horse, or have taken means to dispose of it as she could have done under the statutes of this

Commonwealth." The judge refused to give this instruction, and ruled that the only question for the jury to determine was what was a reasonable sum for the keeping of the horse after the time when the plaintiff offered to return it and the defendants refused to take it back.

We are of opinion that this ruling was wrong. This was the situation of the parties. The plaintiff had received the defendants' horse under a bailment for hire, by the terms of which she was to have the use of it for its board and keeping. The time at which this bailment was to terminate had arrived, and the plaintiff had taken the horse back to the defendants and they had refused to receive it. There was no contract at any time by which she was to board the horse at the defendants' expense. They denied that they had any interest in the horse, contended that she had converted it to her own use, and virtually forbade her to do or expend anything on their account for the care or preservation of it.

There are at least two possible opinions as to the legal relations of the parties and the principles of law by which their rights are to be determined. One is that suggested by the cases of *Whiting* v. *Sullivan*, 7 Mass. 107, *Earle* v. *Coburn*, 130 Mass. 596, and *Putnam* v. *Glidden*, 159 Mass. 47. In this view the rules of law applicable to the case may be stated as follows : It is settled that under circumstances like these in this case the law will not imply a contract to reimburse one for the care of property against an owner who has expressly or impliedly declined to permit such care to be given on his account. No different principle is applied when the property is a live animal from that applicable to ordinary goods. In each of the three cases cited the owner of a horse which was in possession of another person refused to receive it, and the court held that he was not liable for its keeping to the person in whose possession it was left. The rule is that one cannot be held liable on an implied contract to pay for that which he declines to permit to be done on his account. The exception to the rule is that when the law imposes upon one an obligation to do something which he declines to do, and which must be done to meet some legal requirement, the law in some cases treats performance by another as performance for him, and implies a contract on his part to pay for it. A

familiar illustration of this is seen when the law holds one liable for necessaries furnished to his wife, if he has without cause refused to provide for her; but there is no such obligation upon one to retain and preserve his property, whether it be live animals or anything else. He may destroy or abandon it, provided he does not thereby imperil the person or property of another.

In the present case the plaintiff had no right, against the will of the defendants, to expend money for the care and preservation of their horse on their account. The only liability of the defendants to her was a liability in damages for their refusal to receive their horse when she returned it. By the terms of the original bailment they impliedly agreed to receive it and relieve the plaintiff of it when she should bring it back, after the time for her keeping it had expired. Their refusal to receive it was a breach of their contract, and for such damage as resulted directly from their refusal the plaintiff can recover. But that damage includes only the loss or expense that has fallen or necessarily would fall upon the plaintiff in ridding herself of the horse in a reasonable way. It would not include compensation for the board of the horse for an indefinite time for the purpose of preserving it for the defendants. She was under no contract or obligation to keep the horse for their benefit, and if she so kept it, or if she kept it for her own benefit because she was doubtful how the dispute ultimately would be decided, such keeping was not a direct result of the defendants' breach of contract, and she cannot charge them with the expense of it.

The plaintiff in this case had not the full right of an involuntary depositary, who finds property whose owner is unknown. The finder of property may do that which is reasonably necessary for its preservation to prevent loss, and hold the owner responsible on the ground of implied agency. *Preston* v. *Neale*, 12 Gray, 222. See *Field* v. *Roosa*, 159 Mass. 128, 132. But if the owner is known and forbids incurring expense at his charge, no contract can be implied against him.

In the other view of the case the law may be stated thus: On the refusal of the defendants to receive the horse the relation of bailor and bailee still continued (*Andrews* v. *Keith*, 168 Mass. 558), but the obligation of the plaintiff to set the use of the horse against its keeping was at an end. It was a necessary

incident of the relation of the parties that she should be entitled to charge the defendants for the expense which formerly she had been bound to bear, because that expense had to be incurred by her so long as she remained the defendants' bailee.

But the defendants' liability under this view is no greater than as stated under the other; for she was bound to do that which was reasonable under the circumstances to keep the liability as small as possible.   There is a line of decisions which establish the doctrine that where one party has broken an executory contract, the other who is in the right cannot go on indefinitely as if the contract still were unbroken, but is bound to do what he reasonably can to stop the damages for which the first party will be liable in consequence of his breach. *Collins* v. *Delaporte*, 115 Mass. 159, 162.   *Clark* v. *Marsiglia*, 1 Denio, 317.   *Danforth* v. *Walker*, 37 Vt. 239.   *Allen* v. *Jarvis*, 20 Conn. 38.   *Cort* v. *Ambergate Railway*, 17 Q. B. 127.

In either view the plaintiff was bound to make such disposition of the horse as would terminate the defendants' liability for damages or for expenses as soon as she reasonably could do it.

*Exceptions sustained.*