CHARLES W. HODGKINS *vs.* WELDEN W. BOWSER
& another.

Suffolk.    December 7, 1906. — April 2, 1907.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Equity Jurisdiction,* Equitable replevin.  *Lien.   Conversion.   Damages.*

In a suit in equity under R. L. c. 159, § 3, cl. 1, to establish the plaintiff's title to and to recover possession of a race horse, it appeared that the plaintiff previously had replevied the horse at law from the defendant at a time when the plaintiff was not entitled to immediate possession of the horse until he had discharged a lien of the defendant for his keeping, that while the horse was in the possession of the officer under the writ of replevin he was replevied through an abuse of legal process by a person claiming under color of a mortgage, who wrongfully took the horse from the officer and placed him in the care and custody of the defendant. *Held,* that, after the wrongful taking of the horse from the officer and his delivery to the defendant, the defendant held the horse in a new relation created by the interference of a stranger and could have no lien or claim against the plaintiff for his further keeping and care.

If the owner of a horse replevies him from one to whom he has entrusted him for keeping, his action being brought prematurely because he has not the right to immediate possession until he has discharged a lien of the defendant for the keeping of the horse, and if while the horse is in the possession of the officer under the writ of replevin he is replevied through an abuse of legal process by a person claiming under color of a mortgage, who wrongfully takes the horse from the officer and delivers him to the defendant in the first action, the plaintiff, although he cannot maintain an action of tort in the nature of trover against the interfering stranger for the conversion of the horse, because he has not the right of immediate possession, can maintain against him an action of tort in the nature of an action on the case for damages to his general property in the horse subject to the lien, and, in a suit of equitable replevin for the possession of the horse in which the interfering stranger is joined as a defendant, the plaintiff is entitled to have damages assessed against such defendant.

BILL IN EQUITY, filed in the Superior Court on July 19, 1905, under R. L. c. 159, § 3, cl. 1, to establish the plaintiff's title to and to recover possession of a race horse known as Darius, against one Bowser, alleged to be the pretended owner of Darius, and one Whitney, claiming under an alleged pretended mortgage from Bowser of a one half interest in Darius.

In the Superior Court a temporary injunction was granted and a custodian of the horse Darius was appointed.  The case was referred to Elias B. Bishop, Esquire, as master, to hear the

parties and their evidence and report his findings to the court. Upon the filing of the master's report both parties filed objections and exceptions thereto. The Superior Court made an interlocutory decree sustaining the plaintiff's exceptions numbered 6, 7 and 14, and overruling the plaintiff's other exceptions and all the exceptions of the defendant. The plaintiff's exceptions sustained by the decree were as follows:

" 6. In that the master has ruled that as matter of law the defendant Bowser is entitled to an equitable lien for the board and training of the horse from January 1, 1905, up to the proceedings in the present action.

" 7. In that the defendant Bowser is entitled to $184.98 from the plaintiff for such equitable lien."

" 14. The master should have ruled that the defendant Bowser, having recovered possession of said horse through the replevin writ of the defendant Whitney, who had no title to said horse, could not by virtue thereof, by holding possession of said horse and giving him board and training, create a lien, legal or equitable, or any obligation on the part of the plaintiff to pay him any sums of money on account of said horse."

It further was ordered and decreed as follows:

" 1. That the title to the horse Darius is in the plaintiff, and that the custodian deliver said horse forthwith to the plaintiff upon the payment by the plaintiff to the defendant Bowser of the sum of $9.65.

" 2. That the plaintiff recover of the defendant Whitney the sum of $450 as damages sustained prior to the filing of the bill.

" 3. That this case stand for the assessment of the damages sustained, if any, by the plaintiff since the date of the filing of the bill, and for such other orders and decrees as may be necessary."

The custodian filed a report, submitting a bill for services and expenses amounting to $313.10.

Later the Superior Court made a final decree as follows:

" 1. That the defendant Whitney pay the bill of the custodian of the horse Darius filed in this cause and an additional sum of $5 for the keeping of the horse for the week prior to the entry of this decree, not included in said bill, making a total of

$318.10, and that execution in favor of W. F. Gibbons [the custodian] issue therefor."

" 2. That the plaintiff recover of the defendant Whitney costs in the sum of $60.19, and that execution issue to the plaintiff therefor, together with the sum of $466.20."

The defendants appealed from the interlocutory decrees and from the final decree.

*J. H. Vahey,* (*P. Mansfield* with him,) for the defendants.

*W. R. Sears,* for the plaintiff.

BRALEY, J. This is a bill brought under R. L. c. 159, § 3, cl. 1, to determine the title to and recover possession of a horse, which having been secreted without this jurisdiction could not be replevied at law, and also for general relief. *Strickland* v. *Fitzgerald,* 7 Cush. 530. The answer of the defendant Bowser as amended, while not technically pleading a lien, does set forth that in the training and the care of the horse he expended large sums of money for the benefit of the plaintiff for which he should be reimbursed. The objection was not taken by either of the defendants, that in equity as at law the plaintiff could not prevail unless he showed a right to immediate possession at the date of instituting the action. See *United Shoe Machinery Co.* v. *Holt,* 185 Mass. 97, 101. But the case evidently was tried with the object of finally settling all questions in controversy, not merely as to ownership, but arising upon an accounting between the parties, to which the plaintiff was entitled. *Pierce* v. *Equitable Assurance Society,* 145 Mass. 56, 60. The case was referred to a master and, upon the coming in of his report, while both parties filed exceptions, only those taken by the defendants are before us on the appeal taken by the defendants from the interlocutory and final decrees.

In the decree appointing him, the master was not required to report the evidence, and the ordinary rule becomes applicable that his findings of fact are to be deemed final. *East Tennessee Land Co.* v. *Leeson,* 183 Mass. 37. The master finds that the title to the horse is and always has been in the plaintiff, and the questions are, whether the defendant Bowser has an equitable lien for keeping and training, and whether the defendant Whitney should be held liable in damages as for a conversion. The plaintiff concedes that at common law a lien existed, which would -

have to be discharged before he became entitled to possession. *Harris* v. *Woodruff*, 124 Mass. 205. But, while the plaintiff is willing to pay the small sum which the master found remained due, the bailee claims a much larger amount, and contends that the, interlocutory decree sustaining the plaintiff's exceptions to the report, which established an equitable lien therefor in his favor, should be reversed. It appears that the plaintiff having become dissatisfied with the management of the horse, which had participated successfully in a number of races, asked for an account of the cost of maintenance and of the winnings, and, upon this being refused, or not furnished, replevied the horse. At that time there was a balance in favor of the defendant Bowser, for which he had a valid lien, and, no tender before the action having been made, the master finds that that action was prematurely brought, and could not be maintained. It is at this point that the defendant Whitney intervenes. He held a mortgage on personal property of the co-defendant, but, while reference is made in the instrument to the interest of the mortgagor in the horse, the master correctly ruled that no title to the animal passed. After the horse had been taken, and while he was being held by the replevying officer, the defendant Whitney replevied him from the officer, and, although the master does not expressly so state, the just inference from the finding of the continued possession of the defendant Bowser, except for this interruption, is, that upon the second replevin Bowser again was given the custody of the horse by Whitney. The common law of the State of Vermont, where these proceedings took place, was not put in evidence, and upon this subject, therefore, must be held to be similar to our own. *Callender, McAuslan & Troup Co.* v. *Flint*, 187 Mass. 104, 107. If possession was not relinquished voluntarily, and a lien for the amount then due still attached, which upon trial of the first action would have defeated the plaintiff's right to possession, yet the bailee could not at law, without the express or implied authority of the plaintiff, subject the horse to a further lien. Upon taking him in replevin the plaintiff was required to care for the horse, which was to be returned if the action was defeated, or, if he failed to do this, the replevin bond stood as representing the property. *Parker* v. *Young*, 188 Mass. 600, 604. In any event all that finally could have been recov-

ered in an action on the bond would have been the amount of the lien then existing and nominal damages, as the ownership was in the plaintiff. It has been said that property while in the custody of the law, as it necessarily is pending seizure by the officer on a writ of replevin and before he turns it over to the plaintiff, is irrepleviable, although upon such delivery replevin will lie. *White* v. *Dolliver*, 113 Mass. 400, 407. If Whitney after taking the horse placed him in the care and custody of Bowser this employment was not a continuation of the plaintiff's contract and hence of the existing lien, but was an entirely new relation created by the interference of a stranger. Indeed, the master recognizes this, as he states that from this time on the right, if any, to retain the horse until these charges are paid, is purely equitable. But, if so, it must rest on some contractual relation either express or implied. *Elmore* v. *Symonds*, 183 Mass. 321, 325. By suing out the writ Whitney did not become by operation of law the agent of the plaintiff to incur further expense in keeping and training the horse, and consequently could not impose this involuntary burden upon him. *Keith* v. *De Bussigney*, 179 Mass. 255, 259. The plaintiff had been unable after repeated demands to obtain a statement of the account, and believed, as subsequently was shown, that the money the horse had won at races amounted to a substantial sum. Acting upon this belief, he replevied the horse, and it was only after an accounting in which large charges for training were deducted, that a lien at law for less than $10 was found to have existed at the time. By an abuse of legal process Whitney took possession and turned the horse over to Bowser, and whatever subsequent claim for his keeping and care may have arisen from this cause, it must be adjusted between the defendants themselves, who apparently acted in concert. See *Putnam* v. *Glidden*, 159 Mass. 47.

All of the questions raised by the defendants thus are disposed of, except the sixth exception. In substance by this exception, the defendant Whitney contends that, as the plaintiff could not have maintained his action, the second action of replevin, although found to have been unwarranted, was not evidence of a conversion by him. At common law an action of trover could not, and under R. L. c. 173, § 1, cl. 2, an action of tort in the

nature of trover cannot be maintained, unless at the date of the writ the plaintiff unites in himself both the title and the right to possession of the chattel converted. *Raymond Syndicate* v. *Guttentag*, 177 Mass. 562. The plaintiff, however, was not restricted to this form of remedy, for if not entitled to immediate possession, as against Bowser he either could maintain at common law an action on the case, or under the statute an action of tort against Whitney for damages to his reversionary interest. *Ayer* v. *Bartlett*, 9 Pick. 156. *Forbes* v. *Parker*, 16 Pick. 462. See also *Baker* v. *Seavey*, 163 Mass. 522. But, while the basis upon which the master computed damages for the unlawful act are not stated, no exception has been taken to this finding, and it is plain that thereafter the possession of the horse by the bailee could not be considered in mitigation of the amount assessed, as he was not for this purpose the plaintiff's agent. *Robinson* v. *Sprague*, 125 Mass. 582, 584. *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway*, 187 Mass. 500, 506. This exception, therefore, must be overruled, and it follows that the interlocutory and final decrees severally must be affirmed.

*So ordered.*