NEW YORK CENTRAL RAILROAD COMPANY *vs.* STURTEVANT AND HALEY BEEF AND SUPPLY COMPANY.

SAME *vs.* S. S. LEARNARD COMPANY.

Suffolk. March 7, 1920. — May 20, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Contract,* Validity, Implied. *Carrier,* Of live stock.

A provision in a contract made by a railroad corporation in the State of Illinois for the shipment of live stock from Chicago in that State to Boston, that the shipper was "at his own sole risk and expense to load and take care of, and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same, and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same," is valid and, in the absence of wanton

or reckless misconduct on its part, relieves the corporation from any duty at common law to the shipper and to the consignee to load and to take care of and to feed and water the live stock while in transportation under the contract.

A railroad corporation, which habitually had accepted cattle from a certain shipper at Chicago in the State of Illinois for shipment to Boston in this Commonwealth under a contract containing the provision above described, in order to comply with the requirements of 34 U. S. Sts. at Large, 607, previous to July, 1913, at a certain point in the shipment had caused the stock to be fed uniformly at the rate of one hundred pounds of hay per carload. The cattle were of a special type such that this practice was reasonable, adequate to their special needs and involved no element of cruelty, and they reached Boston in good condition and without appreciable loss of weight. In May, 1913, the federal department of agriculture issued a circular, which, without the force of law, represented the "views of the department" to be that a proper feeding would be at a rate which would require three hundred pounds of hay per carload for these shipments, and the railroad corporation in July of that year caused the feeding to be done at that rate, but, it appearing that much of the feeding so furnished was not consumed, it returned to the practice of feeding but one hundred pounds to the carload in the yards, placing the two hundred pounds, which constituted the remainder of the three hundred pounds suggested by the department of agriculture, in the cars as they continued their journey. The shipper demanded of the railroad corporation that it cease placing the two hundred pounds in the cars but the railroad corporation insisted upon continuing and did continue the practice because of the ruling of the department of agriculture. During the rest periods neither the owner nor the shipper of the cattle exercised their right or option of feeding the animals. The consignee refused to pay for the two hundred pounds placed in each of the cars at the point of rest. In an action by the railroad corporation against the consignee for the value of the two hundred pounds of hay per each carload thus placed in the cars, it was *held*, that

(1) The railroad corporation after the demand by the shipper had no authority from him to furnish feed beyond what was reasonably adequate for the special needs of the cattle;

(2) The railroad corporation did not have a right, superior to that of the shipper, to dictate what was a reasonable amount of feed to be given to the cattle while in transportation;

(3) One hundred pounds of hay per carload at the point of rest having been found to have been reasonable and adequate for the special needs of the cattle and the shipper having demanded that no more be furnished by the railroad corporation on his account, the consignee was not liable for any feed furnished beyond that amount after the shipper's demand.

At the trial of the action above described, there was admitted, subject to objections by the plaintiff, evidence tending to show that the shipper, during the years of the shipments in question in the action, had placed two hundred pounds of hay upon each car at Chicago and had given to the initial carrier there memoranda including instructions to feed one hundred pounds per car at the point of rest; and, it having appeared that, five years after the time of the shipments in question, the plaintiff had changed its method and had begun feeding two hundred pounds of hay per carload at the point of rest and placing no hay in the cars outbound from there, following the promulgation of a further circular by the

federal department of agriculture suggesting that the views of that department as to the minimum requirements of the law would be met by furnishing not less than two hundred pounds of hay or its equivalent per carload, the defendants, subject to further objections by the plaintiff, were permitted to introduce further evidence tending to show that, following that change by the plaintiff, the shipper ceased to place any hay in the cars at the point of shipment. *Held,* that the evidence objected to by the plaintiff was relevant upon the issues raised by it, and that it was admitted properly.

At the trial in the Municipal Court of the City of Boston of the action above described, the plaintiff objected to the admission of certain evidence and filed a request for a report stating its objections and the rulings of the judge thereon. The judge found for the plaintiff. The plaintiff did not file a draft report. At the request of the defendant the action was reported to the Appellate Division, who dismissed the report, and the defendant appealed. The record in this court contained a statement of the rulings admitting the evidence to which the plaintiff had objected, and the plaintiff in this court urged that, if the rulings of the trial judge ordering judgment for the plaintiff were wrong, and the rulings admitting evidence to which it had objected also were wrong, the action should be remanded to the trial court for a new trial. This court, in reversing the order of the Appellate Division dismissing the report of the rulings ordering judgment for the plaintiff, *stated* that no question arose as to the form of the report, and *held* that the evidence objected to by the plaintiff properly was admitted, and that judgment should be entered for the defendant.

Two ACTIONS OF CONTRACT, in each of which the plaintiff sought reimbursement for money paid by it for the feeding and bedding at East Buffalo in the State of New York of carloads of live stock consigned to the defendant and being transported by the plaintiff. Writs in the Municipal Court of the City of Boston dated May 13, 1915.

In the Municipal Court the actions were tried together. The material evidence and findings of the trial judge are described in the opinion. The defendants there asked for the following rulings of law:

"5. There being no statutory requirement for feeding cattle after end of one rest period until another rest period arrives, carrier can not require payment for food furnished to cattle in cars in which they were transported after expiration of rest period, except upon proof of an express or implied contract with owner or person in custody thereof to pay for feed so furnished after expiration of rest period.

"6. The carrier is not authorized by law to substitute a feeding in cars after expiration of rest period and while cattle are in transit for the feeding in properly equipped pens required by the statute.

"7. The evidence shows that only one hundred pounds per car was fed to cattle during the rest period prescribed by said statute.

"8. The evidence shows that defendants have already paid for the one hundred pounds per car so fed to the cattle during the rest period.

"9. The evidence shows that the shipper and consignee protested against the placing of two hundred pounds or any other amounts of hay in the cars in which the cattle were transported after the statutory rest period and have continuously refused to pay for same.

"10. The evidence fails to show either an express or implied contract on the part of the owners or person in custody of the cattle to pay for the amounts of hay placed in the cars in which the cattle were placed after the expiration of the rest period and while the cattle were in transit."

Upon these requests, the judge ruled as follows: "As I read the fifth and tenth requests, what is meant by the word 'implied' therein is 'implied in fact.' So reading these two requests, I refuse them. I give the sixth ruling requested, substituting the words 'the statute' for the word 'law.' Without that substitution I refuse it. I refuse the seventh, eighth and ninth requests as rulings of law, but I find the facts therein recited. In view of the ruling which I have already made, I deem it unnecessary to dispose in detail of the plaintiff's requests."

The judge also found and ruled as follows: "I find also that, taking into account the miscellaneous character of shipments passing through the East Buffalo yards, the conflict of expert opinion as to what constituted a proper feeding, the fact that Swift and Company did not assume itself to do the feeding over the entire trip, and that there was at the yards government inspection, placed there to secure compliance with federal law, the position which the plaintiff took in its letter of August [27], 1913, was a reasonable one. [This letter is quoted in the opinion.] So far as actual assent goes, neither party at any time acquiesced in the position taken by the other. In this situation, I rule that the plaintiff, by reason of its public service character, had the superior right to dictate within the bounds of reasonableness the terms of the bailments, as concerns feeding.

"I rule that the plaintiff cannot recover in this action by force

of the obligation imposed on it by the '28-Hour Law,' [34 U. S. Sts. at Large, 607,] for feed furnished in the cars. I also rule that it may recover outside the terms of that act, for feed reasonably furnished, and that its rights are not limited to those arising under the statute, and I find for the plaintiff upon the third count of its amended declaration, for the amount therein claimed, including interest."

At the request of the defendants, the actions were reported to the Appellate Division. The docket in the Municipal Court shows that the plaintiff also filed a request for a report; but it does not appear that it filed any draft of a report. The record in this court contains the following statement relating to the evidence referred to in the next to the last paragraph of the opinion:

"These findings of fact were reached upon evidence, part of which plaintiff objected to (under claim of report) as follows:

"1. William C. Watson, an employee of Swift and Company, having direct charge at Chicago of the shipment of their live stock during the years 1913 and 1914, was permitted to testify that at the time the cattle involved in these cases were loaded at Chicago for their movement toward Boston, two hundred pounds of hay were placed in each car before they were shipped.

"William Woods, live stock agent of Swift and Company at the East Buffalo stockyards during the years 1913 and 1914, was permitted to testify that two hundred pounds of hay were placed in the cars by Swift and Company at Chicago.

"This evidence was admitted over the objection and exception of the plaintiff based on the ground that it attempted to vary the terms of the written contract of shipment and was immaterial.

"2. The said Watson was also permitted to testify that the practice at the time of the shipments here involved was for Swift and Company's loaders to furnish to the agents of the initial carrier at Chicago written memoranda on a piece of scratch pad or an envelope bearing the name of the consignee, the weight and the number of the animals, the car numbers, and instructions to feed one hundred pounds at East Buffalo.

"This evidence was admitted over the objection and exception of the plaintiff based on the ground that (1) not being part of the original contract of shipment the method by which they were furnished did not constitute notice to the plaintiff, and (2) the

shipper could not limit by unreasonable instructions the plaintiff's public duty to properly feed the cattle.

"3. John H. Perhamus, live stock agent for the New York Central lines at East Buffalo, was permitted to testify on cross-examination that since the promulgation of the circular of the department of agriculture, dated April 23, 1919, (to the admission of this circular plaintiff consented) the plaintiff has changed its method and amount of feeding at the East Buffalo stockyards and now feeds two hundred pounds of hay in the yards and places no hay in the outbound cars. [The circular above referred to stated that, after further consideration of the feeding, watering and resting of cattle, the department concluded that "the use of a carload as a unit basis, rather than the hundredweight of animal, is a more satisfactory method for arriving at the amount of feed which should be given to the animals," and "that the handling of animals in accordance with the suggestions outlined below will meet the views of the department of agriculture as to the minimum requirements of the Law: . . . Cattle — Not less than 200 lbs. of hay, or its equivalent per car."]

"The said William C. Watson was permitted to testify that following the change in ration made by the plaintiff at East Buffalo in April, 1919, Swift and Company changed its practice respecting the amount of hay placed in the cars at Chicago and now places only one hundred pounds of hay in each car.

"This evidence was admitted over the objection and exception of the plaintiff, based on the ground that it was immaterial."

The report made at the request of the defendants was dismissed by the Appellate Division. The defendants appealed.

*P. B. Smith,* for the defendants.

*C. O. Pengra,* (*R. A. Stewart* with him,) for the plaintiff.

PIERCE, J. These two actions were tried together in the Municipal Court of the City of Boston. In each case the trial judge found for the plaintiff against the defendant on the third count of the declaration. These counts respectively are common counts upon an account annexed. In the action against Sturtevant and Haley Beef and Supply Company, the plaintiff says in that count that the defendant owes it $1,406.25 "charges accruing at East Buffalo between August 22, 1913, and October 7, 1914, in feeding and bedding carloads of live stock shipped by Swift and Company to

the defendant at East Cambridge according to the account hereto annexed, together with interest thereon from October 7, 1914, when the same became due and payable, and payment was refused." In the action against S. S. Learnard Company the plaintiff says in the corresponding count that the defendant owes it $589, "charges accruing at East Buffalo between November 29, 1913, and August 21, 1914, for feeding and bedding carloads of live stock shipped by Moag and Greenwald to the defendant at Brighton according to the account hereto annexed, together with interest thereon from August 21, 1914, when the same became due and payable, and payment was refused." Upon a report to the Appellate Division, the report was dismissed, and the cases are before this court on appeal from that decision. The defendants raise no question of their liability to the plaintiff as consignee for further charges sought to be recovered if their shippers are primarily liable for the payment of such charges. *New York, New Haven, & Hartford Railroad* v. *York & Whitney Co.* 215 Mass. 36. *Union Freight Railroad* v. *Winkley,* 159 Mass. 133, 135. *Old Colony Railroad* v. *Wilder,* 137 Mass. 536.

The shipments were made from Chicago and moved over the New York Central Railroad and its connecting carrier, the Boston and Albany Railroad, to the plants of the defendants in the neighborhood of Boston. The normal time consumed in transportation of live stock from Chicago to Boston was from fifty-six to sixty-four hours. All the shipments were under uniform live stock contracts, and each contained the provision "That the said shipper is at his own sole risk and expense to load and take care of, and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same, and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same." In the absence of gross negligence, the quoted provision from the contracts made in Illinois, to be performed in part in that State and in part in other States, relieved the plaintiff from any common law legal duty to the shippers and to these defendants to load and take care of and feed and water live stock while in transportation under the contracts. *Brockway* v. *American Express Co.* 168 Mass. 257. *Cleveland, Cincinnati, Chicago & St. Louis Railway* v. *Patterson,* 69 Ill. App. 438. It is held by a

great number of decisions collected in 10 C. J. 95, note 44, that such a contract is valid.

The Act of Congress, June 29, 1906, c. 3594, 34 U. S. Sts. at Large, 607, was in force during the entire time covered by the accounts annexed to the plaintiff's declarations. So far as pertinent to the present case, that act provides: "That no railroad . . . transporting cattle . . . through another State . . . shall confine the same in cars . . . for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours. . . . That animals so unloaded shall be properly fed and watered during such rest either by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad . . . at the reasonable expense of the owner . . . but nothing in this section shall be construed to prevent the owner or shipper of animals from furnishing food therefor, if he so desires." Pursuant to § 1 of the act, the time of confinement in the case of each shipment was extended to thirty-six hours upon the written request of the owner.

The cars in each shipment were moved with reasonable dispatch and the cattle were unloaded into properly equipped pens for rest, water and feeding at the East Buffalo stockyards, where the New York Central Stockyard Company provided them with substantially three hundred pounds of hay per carload, the expense of which was billed to and paid by the railroad in due course. The amount of the charges at the rate of $1.50 per hundred pounds of hay was in accordance with the railroad's tariff duly filed with the Interstate Commerce Commission, and is not in dispute. Previous to July 1, 1913, Swift and Company habitually had shipped from Chicago and nearby points to the defendant Sturtevant and Haley Beef and Supply Company, carloads of cattle which uniformly had been fed at the rate of one hundred pounds per carload at East Buffalo by the local stockyard company, whose charges therefor were repaid by the consignee. Swift and Company habitually had placed in each car at Chicago two hundred pounds of hay and the plaintiff habitually had fed in the yard at East Buffalo one hundred pounds of hay per carload. In the action against S. S. Learnard Company there was no evidence that the shipper supplied feed at the point of shipment. The

shipments to the defendants "were of a special type — choice, heavy, fatted, corn-fed cattle, designed for the Boston market, and [those shipped to Sturtevant and Haley Beef and Supply Company] fed to repletion at the shipping points, where they were weighed to fix their sale price. Such cattle would not take hay at the Buffalo yards as freely as cattle from the ranges." The trial judge specifically found "As to such cattle . . . that the practice obtaining before July 1, 1913, was reasonable, adequate to their special needs, and involved no element of cruelty. All the evidence is to the effect that they reached Boston in good condition and without appreciable loss of weight."

On May 31, 1913, the Department of Agriculture issued a circular which without force of law represented the "views of the Department" as to the amount necessary to constitute proper feeding under the U. S. St. of June 29, 1906. It advised in substance that a proper feeding would be at the rate of one and a quarter pounds per hundred weight of animals, which would mean substantially three hundred pounds per carload for these shipments. Shortly thereafter the stockyard company began yard feeding at that rate; but, it appearing that much of the hay so furnished was not consumed, it returned to the practice of feeding one hundred pounds per carload in the yards, and placed the remaining two hundred pounds in the cars east-bound from the stockyard.

On August 23, 1913, Swift and Company wrote to the plaintiff: ".As these cattle shipments will be fed 100 lbs. of hay per car in yards, do not want any more hay put in cars, when cattle are loaded out. Please advise if you will arrange accordingly." On August 27, 1913, the plaintiff replied: ". . . with reference to shipments of cattle for Sturtevant & Haley which are unloaded for feed, water and five hours rest and which you request be fed but 100 lbs. of hay per car. In view of Ruling issued by the Department of Agriculture, recently, which provides that cattle should be fed 1¼ pound of hay per hundredweight of animals, I cannot see my way clear to comply with your request. Therefor[e], we shall continue to feed 100 lbs. of hay in the yard putting the balance in the cars when the animals are reloaded." The plaintiff continued to refuse the shipper's request, and fed one hundred pounds of hay in the yard, put two hundred pounds in each car,

and sent its bill for three hundred pounds to the defendant. After the refusal, Swift and Company sent, and the plaintiff received, shipments of cattle for more than a year.

On December 19, 1913, the defendant S. S. Learnard Company wrote to the plaintiff: "We beg to advise that in the future we shall refuse to pay feeding charges at the rate of $4.50 per car as recently billed. If it is later shown that the charge of $4.50 is a proper charge, we will of course pay same. . . . We will pay at rate of 1.50 car as formerly." On August 15, 1914, the plaintiff replied to the letter of December 19, 1913: "This matter has been reported to . . . and the entire question has been referred to their General Attorney, who has advised that if their Company had not fed the animals properly they would no doubt have been prosecuted by the Government, and in his opinion you are liable for the charges to cover the quantity of feed furnished this stock. Please advise if your decision is final and that it is your intention to force us to take measures to collect these charges." On September 9, 1914, this defendant replied: "We are still of the opinion that we should not be charged in excess of $1.50 per car and consequently shall have to decline payment of your charges of $4.50."

During the rest periods at East Buffalo neither the owner nor the shippers exercised the option of performing themselves the statutory duty of watering and feeding the animals, nor by themselves did they perform their contractual duty "to feed and water said stock whilst being transported." Because of these defaults the plaintiff perforce of the statute became obligated to perform the duty which the statute primarily places upon the owner and shipper of live stock; and it had "a lien upon such animals for food, care, and custody furnished, collectible at their destination in the same manner as the transportation charges are collected." Irrespective of the requirements of the provisions of the statute, under the contract upon default of the owner or shipper to feed and water the animals whilst in transportation the plaintiff, at least to the extent of its common law duty, became the involuntary agent of the owner or shipper with an implied authority, if not with a positive duty, until its authority was revoked, to feed, water and rest the animals committed to its custody by the owner or shipper whenever and wherever such action became reasonably necessary to keep the animals in good condition or to

save them from unnecessary suffering. *Louisville & Nashville Railroad* v. *Spalding, Mimms & Co.* 8 Ky. L. Rep. 355. *Chicago, Burlington & Quincy Railroad* v. *Williams,* 61 Neb. 608. *Lewis* v. *Pennsylvania Railroad,* 41 Vroom, 132. The legal fact, if such be the law, that the plaintiff would not be liable to the owner or shipper in an action of negligence should loss or injury result from a failure to feed and water the animals following the time it had knowledge that the owner or shipper had neglected or refused so to do in breach of the owner's or shipper's contract with the plaintiff, does not stand in the way of the plaintiff's right to a reimbursement of money expended in behalf of the owner or shipper, which was necessitated by the breach of the contract or which was paid out in feeding and caring for the animals with the assent or silent acquiescence of the owner or shipper.

In the cases at bar the trial judge found that "The defendants from time to time made payments equivalent in amount to the 100-lb. feedings in the yards;" and that "the defendants intended to pay for the yard feedings and not for the car feedings, and that the plaintiff knew it." He ruled that the plaintiff had not the right to apply such payments to the car feedings, and further ruled "that the plaintiff cannot recover in this action by force of the obligation imposed on it by the '28-Hour Law,' for feed furnished in the cars." These rulings were clearly right. The plaintiff provided water, feed and rest facilities in each shipment at the rest pens in East Buffalo, and the defendants have paid the plaintiff the entire amount expended by it in feeding the animals at the rest pens.

It is the contention of the plaintiff, and the trial judge ruled, that the plaintiff could recover outside the terms of the act for feed reasonably furnished in the cars outside the rest pens, notwithstanding the request of Swift and Company on August 23, 1913, and of the S. S. Learnard Company on December 19, 1913, that no hay be placed in the cars in addition to the one hundred pounds fed in the yards. The plaintiff recognizes the elementary rule in the law of contracts that a permissive fact cannot be implied against the express declaration of a person sought to be charged under an implied contract, *Keith* v. *De Bussigney,* 179 Mass. 255, 259, but contends that the conduct of the owner, shipper and consignee gives rise to an implied promise despite the

verbal protest and command. *Central Bridge Corp.* v. *Abbott,* 4 Cush. 473. No question of a contract implied in law is open. Outside the terms of the express contract the law imposed no legal obligation on the owner, shipper or consignee to feed the animals in the cars, and the trial judge has expressly found that the practice obtaining before July 1, 1913, was reasonable, adequate to the special needs of the animals, and involved no element of cruelty. *Keith* v. *De Bussigney, supra. Morse* v. *Kenney,* 87 Vt. 445. We cannot agree with the contention of the plaintiff that the shippers lost the right to dictate what should constitute proper feeding when they threw the burden of feeding in transit on the railroad, and that the instruction to feed only one hundred pounds per car was unreasonable and void. *Keith* v. *De Bussigney, supra.*

It is plain on the facts that the S. S. Learnard Company is liable to the plaintiff for the money expended in its behalf with its knowledge between November 29, 1913, and December 19, 1913, when it first notified the plaintiff that it would refuse to pay the "charges at the rate . . . billed . . . [but] will pay at rate of 1.50 car as formerly." It is equally plain the Sturtevant and Haley Beef and Supply Company is not liable for money expended in its behalf, but contrary to its direction, after August 23, 1913. It results that the trial judge should have found for the defendant in the action against the Sturtevant and Haley Beef and Supply Company, and for the plaintiff in the action against the S. S. Learnard Company only to the amount proved to have been expended in its behalf between November 29, 1913, and December 19, 1913.

The evidence as to the feeding of the animals before they left Chicago, as to the instructions to the initial carrier, and as to the plaintiff's change in its method of feeding in the yard at East Buffalo, was properly received, as legally relevant to some one or more aspects of the plaintiff's contention.

No question arises as to the form of the report. It follows that the order, "Report dismissed," must be reversed in each action. Judgment is to be entered for the defendant Sturtevant and Haley Beef and Supply Company, and for the plaintiff against the S. S. Learnard Company, in accordance with this opinion.

*So ordered.*