W. P. JOHNSON *vs.* BOSTON & MAINE RAILROAD CO.

May Term, 1897.

Present:  ROSS, C. J., TAFT, ROWELL, TYLER, MUNSON, START and
THOMPSON, JJ.

*Mail Contracts—Meeting Points—Connecting Trains—Implied Contract—
No Recovery by Volunteer.*

The contract under which the defendant carried the United States mail
required it, at "meeting points," to transfer to connecting trains the
mail which was to be forwarded by such trains.  *Held*, that a "meeting
point" was one where the defendant's mail route met another, as
established by the government, and not a station upon the defendant's
route, separated by a half-mile from another mail route, although trains
from the latter ran over said half-mile to the station, and there connected
with, and received the mail from, the trains of the defendant.

The contract between the plaintiff and the government required the
plaintiff to carry the mail each way between the Wells River post office
and the defendant's railroad, and between the latter and the Woodsville
post office, "including tranfers."  *Held*, that the words quoted could
refer only to transfers between the trains of the defendant and the trains
of another connecting mail route.

The defendant's contract with the government required the defendant,
also, to make these very transfers between trains, but the plaintiff
having actually made them in the belief that he was bound so to do by
his own contract with the government, cannot recover therefor from the
defendant upon an implied contract, even were it held that his contract
did not require him to make the transfers, for the service was not
performed at the request or upon the credit of the defendant.

GENERAL ASSUMPSIT.  Heard upon the report of a referee,
exceptions thereto by both parties and the defendant's
motion to recommit, at the December Term, 1896, Orange
County, *Start,* J., presiding.  *Pro forma* judgment overruling
the exceptions and motion and for the defendant to recover
its costs.  Both parties excepted.

*Smith & Sloane* for the plaintiff.

*John Young* for the defendant.

THOMPSON, J. (1) The contract under which the defendant carried the United States mails during the time in question, required it, at *"meeting points,"* to transfer mails to be forwarded by connecting trains, to such trains. During that time, the mail route over the Concord & Montreal R. R., as established by the United States government, did not include the half mile of its track between Woodsville, N. H., and the union station at Wells River, Vt., at which point it connected with the road of the defendant, but all the regular mail trains of the Concord & Montreal R. R. run from Woodsville to the union station at Wells River where they exchanged mails to and from other trains entering that station, including the defendant's.

A part of the service for which the plaintiff seeks to recover consisted in transferring the mails from the defendant's trains to those of the Concord & Montreal R. R. at the union station.   If the latter were connecting trains at a meeting point within the meaning of the defendant's contract for transporting mails, then it was its duty under its contract to make such transfers of mail.   If the union station at Wells River was not such a meeting point, as between the mail trains of the Concord & Montreal R. R. and those of the defendant, it is not contended by the plaintiff, that it was the duty of defendant to transfer mails from its trains to those of the Concord & Montreal R. R. at the union station.

*" Meeting points,"* as used in the defendant's contract with the government, must be construed to mean points where the defendant's mail route actually met and connected with other mail routes established by the government, and "connecting train," must be taken to mean a mail train connecting with another mail train at such meeting points. Hence the union station at Wells River, was not a meeting point for the defendant as to the mail trains of the Concord & Montreal R. R., the nearest point of whose mail route was at Woodsville, N. H., a half-mile distant from the

union station.  In law, this half-mile was effectual as a disconnection of the two mail routes, as it would have been had it been a hundred miles.  The duty of the defendant under its contract, could not be enlarged by the fact that for its own convenience or for some other reason, the Concord & Montreal R. R. saw fit to run its mail trains to the union station over the half-mile of its track not included in its mail route, nor by the fact that the United States government did not object nor interfere to prevent it.  Therefore the plaintiff cannot prevail on this contention, nor can he recover on this branch of the case.

(2)   The union station at Wells River was a meeting point as to the mail route over the Montpelier & Wells River R. R. and its mail trains entering that station were connecting trains as to the defendant, and as between itself and the government of the United States, it was its duty to transfer mails to be forwarded on mail trains of that road, from its own trains to the mail trains of that road.  The defendant does not claim but that such was the duty imposed upon it by its contract during the time in question, had the government seen fit to require it to make such transfers.  The plaintiff made the tranfers of the mails from the defendant's trains to the trains of the Montpelier & Wells River R. R., during that time, and he claims to recover for such service on an implied promise from the defendant to pay him.  During the entire period covered by this service, except the last nine days thereof, the plaintiff was under a contract with the government of the United States, at a stipulated price which was paid to him by the government, to carry the mails between the post office at Wells River and defendant's railroad and the post office at Woodsville each way, as often as required, *including transfers*.  By the terms of his contract, he was to carry all mails, each way, between the defendant's mail trains and the two post offices named.  If the transfer of mails required by plaintiff's contract, is limited to the defendant's mail trains and the two post

offices specified, there is nothing left for the words, "including transfers," in his contracts of 1886 and 1887, respectively, to operate upon. But they are to be given a meaning, if the subject matter of the contract discloses anything to which this language is applicable. At the time these contracts were entered into by the plaintiff and the government, the mail trains of the defendant, the Concord & Montreal R. R., and the Montpelier & Wells River R. R., all entered the union station at Wells River, and required a transfer of mails to and from each other. In view of the fact that no particular mail train was named, and the further fact that in plaintiff's contract of October 5, 1893, with the government, the transfers were limited to "direct transfers between depots as often as required," his contracts prior to that date must be construed to include the transfer of all the mails to and from all the mail trains of the defendant, entering the union station. Such was the construction given to his contracts prior to Oct. 5, 1893, by both the plaintiff and defendant, and both acted under such construction during all the time in question. The last nine days of the alleged service by plaintiff accrued under his contract of the last named date. In his brief, he does not claim that he is entitled to recover for these nine days, if he is not entitled to recover for the residue of the time. The construction put upon his contracts, precludes his recovery on this branch of the case. It is no concern of his, if the government saw fit by its contract with him and its performance, to relieve the defendant from any duty imposed upon it by its contract.

(3). Were it to be held that the plaintiff was not acting within his contract in transferring the mails from the defendant's mail trains to those of the Montpelier & Wells River R. R., he cannot recover of the defendant for that service on the ground of an implied contract. Strictly speaking, it is incorrect to say that the law implies an agreement. The agreement, if there be one, though not fully expressed in words, is nevertheless a genuine agreement

of the parties. "It is implied only in this, that it is to be inferred from the acts or conduct of the parties, instead of from their spoken words. The engagement is signified by conduct instead of words. But acts intended to lead to a certain inference, may express a promise as well as words would have done." *Bixby* v. *Moor*, 51 N. H. 402; *Rohr* v. *Baker*, 13 Oregon 350. An express promise differs from an implied promise only in the evidence by which it is proved. In Pollock on Contracts, p. 29, it is said: "Tacit proposals and acceptances must, like express ones, be communicated. If A, with B's knowledge, but without any express request, does work for B such as people as a rule expect to be paid for, if B accepts the work or its result, and if there are no special circumstances to show that A meant to do the work for nothing, or that B honestly believed that such was his intention, there is no difficulty in inferring a promise by B to pay what A's labor is worth. And this is a pure inference of fact, the question being whether B's conduct has been such that a reasonable man in A's position would understand from it that B meant to treat the work as if done to his express order. The doing of the work with B's knowledge is the proposal of the contract, and B's conduct is the acceptance." * * "When the proposal itself is not express, then it must also be shown that the conduct relied on as conveying the proposal was such as to amount to a communication to the other party of the proposer's intention." *Day* v. *Caton*, 119 Mass. 513. Unless the party benefited has done some act from which his assent to pay for the service may fairly be inferred, he is not bound to pay. *Chadwick* v. *Knox*, 31 N. H. 226; 64 Am. Dec. 329. As a general rule, *prima facie*, valuable, manual services, rendered by one person for another, the benefits of which are knowingly accepted and enjoyed by the latter, were not intended nor understood as a donation. Unless there is something in the relation of the parties, the nature of the services rendered, or other circumstances attending or

surrounding the transaction to rebut this presumption, a contract to pay for such services will be inferred from the acts and conduct of the parties. *Hood* v. *League*, 102 Ala. 228. Such presumption may be rebutted by evidence showing the nature of the services, the relation of the parties or other circumstances, to be such as to preclude any inference that such services were to be paid for by the person sought to be charged therewith. 3 Am. & Eng. Ency. Law 861. The circumstances in the case at bar rebut any such presumption or inference. The contracts under which the plaintiff acted were fairly susceptible of the construction which he and the defendant put upon them, if that were not the correct construction. The defendant claimed and understood that it was the duty of the plaintiff to make the transfers, and he knew or ought to have known as a careful, prudent, man, under the circumstances, that the defendant so claimed and understood. The referee expressly finds that the plaintiff, while performing the service for which he seeks to recover, supposed that it came within the scope of his contracts. This precludes the idea that while rendering the service he expected the defendant would pay him therefor, or that the defendant knew or ought to have known that he expected pay therefor from it. Both parties then understood that the defendant was not to pay for such service.

The plaintiff understood that the government was to pay him and did the work on its credit. This precludes a recovery from the defendant. *Rohr* v. *Baker*, 13 Oregon 350.

It also appears that the defendant never requested the plaintiff to perform such service, and the evidence did not disclose that the subject was ever mentioned between him and any officer of the defendant before he commenced the work, nor while it was being performed, nor until he notified the defendant that he should no longer do it, and ceased to do it, October 15, 1893. After the plaintiff entered

into his contract with the government in 1886, the defendant construing that contract to mean that plaintiff was to transfer all mails arriving at Wells River on the defendant's trains, discontinued making such transfers by its servants. The plaintiff was not called upon by the defendant nor by the government to make the transfers which the defendant had discontinued, but he, thinking that it might be his duty to make them, voluntarily proceeded to perform such service during the whole time in question. There was no such necessity for the plaintiff's interference, if he was not acting within his contract, as would authorize him to perform the service at the expense of the defendant, even though it were neglecting a duty under its contract. In this view of the case, he must be taken to be an officious volunteer, and therefore precluded from recovering. Keener on Quasi Contracts, 349, 350, 351; *Chadwick* v. *Knox*, 31 N. H. 226: 64 Am. Dec. 329.

*Judgment affirmed.*