JOHN W. MATHIE *v.* JOHN E. HANCOCK.

January Term, 1906.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed February 16, 1906.

*Implied Contracts—Quasi Contracts—Volunteers—Liability of Administrator for Services Rendered Before His Appointment.*

To render a person liable on a promise implied in fact, it must appear that he assented to the obligation.

Liability on a *quasi* promise, or promise implied in law, exists irrespective of intention, and may flow either from the doctrine that one shall not be allowed to enrich himself unjustly at the expense of another; or from the doctrine that where an obligation is imposed by law upon one to do an act because of an interest in the public to have it done, and that one fails to do it, he who does do it, expecting compensation, may recover therefor of him on whom the obligation is imposed.

No inferences can be drawn by the court from agreed facts, because the agreement is the voluntary act of the parties.

In assumpsit against an administrator, the agreed statement showed only that before and at the time of his death defendant's testate was living on the town farm as superintendent thereof, and that plaintiff resided with him and was engaged in breaking horses of his own and horses of the testate; that after the death of said testate, the overseer told plaintiff that the town would neither care for the testate's horses nor furnish them food; that thereafter plaintiff fed and cared for said horses till they were taken by defendant as administrator, which was as soon as he was appointed and qualified as such. *Held,* that, for aught that appears, plaintiff was a mere volunteer who expected no compensation, and therefore, he is not entitled to recover.

The defendant was under no duty in respect of the horses during the time in question, for he was not administrator, and did not know, so far as appears, and had no interest to know, either the condition of things or what plaintiff was doing.

GENERAL ASSUMPSIT. Heard on an agreed statement at the March Term, 1905, Orleans County, *Tyler,* J., presiding. Judgment for the defendant to recover his costs. The plaintiff excepted. The opinion states the case.

*Horace F. Graham* for the plaintiff.

Defendant is liable as on a quasi-contract. Plaintiff performed for defendant a duty which was imposed on him by the law, and which he neglected to perform. Keener Quasi-Contracts, 341; *Jenkins* v. *Tucker,* 1 H.,Bl. 90; *Ambrose* v. *Kerrison,* 10 C. B. 776; *Bradshaw* v. *Beard,* 12 C. B. 344; *Patterson* v. *Patterson,* 59 N. Y. 574; *Cunningham* v. *Reardon,* 98 Mass. 538; *Chase* v. *Corcoran,* 106 Mass. 286.

*Taylor & Dutton* for the defendant.

There is no rule of law or equity which obliges an administrator to pay for work which he has not ordered and which has not been done for him. *In re Watson,* 19 Q. D. C. 234; *Luscomb* v. *Ballard,* 5 Gray 403, 66 Am. Dec. 374.

Plaintiff did not act by reason of anything which defendant did, or omitted to do; so, as to defendant, he stands as a mere volunteer. *Kattman* v. *San Francisco,* 20 Cal. 96, 81 Am. Dec. 96; 15 Am. & Eng. Enc. Law 1083; *State* v. *St. Johnsbury,* 59 Vt. 332; *Manning* v. *Leighton,* 65 Vt. 84; *Walton* v. *Hall's Est.,* 66 Vt. 463; *Shaw* v. *Hallihan et al.,* 46 Vt. 389; *Mathews, Admr.* v. *Mathews,* 56 Ala. 292.

ROWELL, C. J. This is general assumpsit. The facts, as agreed upon by the parties, are these: The defendant is administrator of the estate of one Niles, which is in process of settlement in the probate court. Before and at the time of his death, Niles lived upon and carried on the town farm of the town of Hardwick, most of the cows on which belonged to the town. Immediately after Niles's death, the overseer of the poor, who was also superintendent of the farm, took possession of the farm and the cows. For some time before the death of Niles, the plaintiff made it his home with him on the farm, and was engaged in handling and breaking horses of his own, and horses belonging to Niles and to others, and was so engaged at the time of Niles's death. When the overseer took possession of the farm, he told the plaintiff that the town would not care for the intestate's horses, nor furnish hay nor grain for them; and the plaintiff fed them on hay and grain, and exercised them, until they were taken possession of by the defendant as administrator, which, as we understand from the briefs, was as soon as he was appointed and qualified as such. A portion of the feed so used by the plaintiff, belonged to Niles at the time of his death, and when that was gone, the plaintiff furnished all the feed for the horses. The defendant denies all liability, and refuses to pay the plaintiff for said care and feed; but if the plaintiff is entitled to recover therefor, it

is agreed that he shall have judgment for twenty-five dollars and costs.

It is not claimed that here is an express promise. Nor is there an implied promise in fact, for the defendant's assent does not appear, and that is essential to such a promise. If liability exists, therefore, it must be by virtue of a quasi promise, an implied promise in law, founded either on the doctrine that one shall not be allowed to enrich himself unjustly at the expense of another; or on the doctrine that when an obligation is imposed by law upon one to do an act because of an interest in the public to have it done, and that one fails to do it, he who does do it, expecting compensation, may recover therefor of him on whom the obligation is imposed.

The latter is the ground on which the husband is liable at common law for the expenses of his wife's funeral— *Jenkins* v. *Tucker,* 1 H. Bl. 90; and, in some jurisdictions, executors and administrators, for the expenses of the decedent's funeral. *Patterson* v. *Patterson,* 59 N. Y. 574. But in this State such expenses are debts against the estate, and, after paying the necessary expenses of administration, are preferred above all other debts. V. S. 2503.

The former is the ground on which the owner of lost goods is bound to pay the finder for the money he necessarily laid out and expended in and about the matter, if he takes the goods from the finder; but not otherwise, it would seem, for then he would not be benefited by the finder's outlay. *Chase* v. *Corcoran,* 106 Mass. 286; Keener, Quasi Cont. 357.

The plaintiff was in the service of the intestate at the time of his death only to the extent of handling and breaking horses for him. It does not appear that it was necessary for him to feed and exercise them after the testator's death in order to preserve them, for it does not appear that there was no one

else to do it. True, the town refused, but for aught that appears those interested in the estate could have done it or procured it to be done. At all events it does not appear that they could not. Nor can it be said that the horses were left in the defendant's possession so that it cast any duty upon him to care for them on the ground of humanity nor otherwise. Hence, for aught that appears, he was a mere volunteer in the matter; nor does it appear that he expected compensation, and that cannot be inferred, for no inference can be drawn by the Court from agreed facts, because the agreement is the voluntary act of the parties, the same as is the creation of a board of arbitrators or of referees, from whose findings no inferences can be drawn, because they are a court of the parties' own creation. *Kimball* v. *Estate of Baxter,* 27 Vt. 628; *Darby* v. *National Bank,* 57 Vt. 370.

Nor was the defendant under any duty in respect of the horses during the time in question, for he was not administrator, and did not know, so far as appears, and had no interest to know, the condition of things, nor what the plaintiff was doing. If the defendant had paid the plaintiff, it would be for the probate court to say whether he should be allowed therefor in his administration account. The defendant, therefore, is not liable on the second ground above stated. Nor is he liable on the first ground, notwithstanding the estate may have been benefited, for the plaintiff was a volunteer, and that defeats him, however it might be if he were not.

In the *Matter of Watson,* ex parte *Phillips,* 19 Q. B. D. 234, Watson, during a period in which there was no personal representative of the estate of a deceased testatrix, and acting upon the instructions of one Eaton, a relative of the deceased, who had no authority in the premises, did work as a solicitor in respect of the administration and for the benefit of the es-

tate. Subsequently the respondent Phillips obtained letters of administration *de bonis,* and refused to pay Watson; and it was held by the Court of Appeals, affirming the decision of the Queen's Bench Division, that he was not bound to pay, because the work was not performed under any contract with him. The Court said that Watson was a mere volunteer as far as the administrator was concerned, and must look to Eaton for payment, and that there was certainly no rule of law nor principle of equity that obliges an administrator to pay as administrator for work that he did not order and was not done for him. To the claim that as the work was beneficial to the estate, and Phillips as administrator had received that benefit, it would be unconscientious in him not to pay for it, the Court said if that was so, which it doubted, it would not make new law in order to compel people to do that which they were bound in conscience to do.

In *Luscomb* v. *Ballard,* 5 Gray, 403, 66 Am. Dec. 374, it was held that an executor cannot be charged in any capacity for services beneficial to the estate, rendered before his appointment and without his assent, under contracts with a special administrator and with an executor named in the will but who declined the trust.

*Judgment affirmed.*