CLEO D. MORSE *v.* PATRICK KENNEY.

Special Term at Rutland, November, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed February 6, 1914.

*Contracts—"Implied Contracts"—Quasi Contracts—Volunteers —Keep of Horse.*

There are two kinds of implied simple contracts:  First, a true contract, where the minds of the parties meet in an agreement, but expressed or evidenced only by their conduct and the surrounding circumstances, and so inferred or implied therefrom as a fact; and, second, where there is no meeting of minds at all, express or implied, and hence no contract at all, but nevertheless, the law raises an obligation, based on a fictitious promise and resulting from the application of the equitable doctrine that one shall not be allowed unjustly to enrich himself at the expense of another, which, because it is enforceable by an action of assumpsit, is called a "*quasi* contract."

An implied true contract, as distinguished from a *quasi* contract, is never inferred against the express understanding of the parties, and so defendant could not be liable to plaintiff on such implied contract for the keep of a horse, where defendant expressly told plaintiff that defendant did not own the horse and would not be responsible for its keep.

Unless the party benefited by the services of another has conducted himself so that his assent to pay therefor may be fairly inferred, he is not bound by a contract implied in fact.

In implying a *quasi* contract, the law raises the promise regardless of, and sometimes contrary to, the intention of the party bound, the

implied agreement being one defining his duty rather than his intention.

Where defendant purchased a horse that the owner was keeping at plaintiff's livery stable, and later repudiated the contract on the ground of misrepresentation and returned the horse, but plaintiff's servant refusing to receive it, defendant left it hitched just outside the livery stable, and plaintiff, knowing the circumstances, put it into the stable, cared for it, and informed defendant that it was being fed for him at a designated price, whereupon defendant replied that the horse did not belong to him and he should not pay for its keep, plaintiff was a mere volunteer, and could not recover from defendant for keeping the horse on either a *quasi* contract or an implied true contract to pay plaintiff for such services.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by court at the March Term, 1913, Rutland County, *Butler,* J., presiding. Judgment for the defendant to recover his costs. The plaintiff excepted. The opinion states the case.

*C. V. Poulin* for the plaintiff.

*T. W. Moloney* for the defendant.

TAYLOR, J. This is an action of general assumpsit. Plea the general issue and trial by court. The plaintiff is a livery stable keeper and seeks to recover for the board and care of a certain horse. One Badlam was the owner of the horse in question which was being kept for him by the plaintiff. On May 25, 1911, the defendant, a farmer, went to the plaintiff's stable to purchase a horse for use on his farm. The plaintiff being absent, his servant, one Spaulding, who was in charge of the stable, told the defendant that the Badlam horse was for sale, that it was a good work horse suitable for defendant's use on his farm, that it was able to draw reasonable loads and that it was worth fifty dollars. Spaulding called Badlam by telephone and had some talk with him—the nature of which and whether in the hearing of the defendant does not appear from the findings—upon which he sold the horse to the defendant for fifty dollars. The defendant paid the purchase price to Spaulding for Badlam and took the horse home.

The defendant had not had much experience in dealing in horses and was not much acquainted with their value. He relied wholly upon Spaulding's representations believing them to be true. The next day he attempted to use the horse and found it "weak in its hind quarters," unable to draw a small load and unfit to perform ordinary farm work. The defendant at once returned the horse to the plaintiff's stable, found Spaulding there, claimed the horse was not as represented and asked to leave the horse where he got it; but Spaulding refused to accept the horse back and would not allow the defendant to put it in the stable. The defendant hitched the horse to a ring just outside the stable and went immediately to Badlam's place of business where he demanded the return of his money, which Badlam refused. On plaintiff's return later the same day he found the horse hitched outside, knowing that the defendant had left it there for Badlam, he put it in the stable, fed and cared for it and on the same day wrote the defendant: "Your mare is here and it is 25c a feed." Upon receiving this letter the defendant replied: "The mare you refer to is not mine. Therefore don't look to me for any pay for her feed." Plaintiff kept the horse until July 12 when this suit was brought for its board and care.

Can the plaintiff recover in general assumpsit on the foregoing facts? If so, it must be upon the theory of an implied promise to pay for the board and care of the horse. There are two kinds of implied contracts, as the term is ordinarily used in the books, (1) where the minds of the parties meet and their meeting results in an unexpressed agreement; (2) where there is no meeting of minds. *Harley* v. *United States*, 198 U. S. 229, 49 L. ed. 1029, 25 Sup. Ct. 634. The former class embraces true contracts which are implied in the sense that the fact of the meeting of minds is inferred. Such contracts are more accurately defined as resting upon an implied promise *in fact*. The latter class embraces contractual obligations implied by the law where none in fact exist. In many cases where there is no contract the law upon equitable grounds, imposes an obligation often called quasi-contractual. Harriman on Con. §20. Such obligations are not contracts in the proper sense, since they are created by law and not by the parties. Clark on Con. 14, 27. In such so called contracts the law creates a fictitious promise for the purpose of allowing the remedy by action of

assumpsit. Though created by law and clothed with the semblance of a contract the obligation is not a contract at all. The proper term for such obligations is "quasi contracts"—a term borrowed from the Roman law. Clark on Con. 752. They are called "quasi contracts" because, as the term implies, they are not contracts at all, but have a semblance of contract in that they may be enforced by an action of assumpsit. Keener, Quasi Con. 3. Much of the apparent confusion in the cases arises from a failure to distinguish clearly between implied contracts in fact and contracts implied in law, or constructive contracts.

The plaintiff cannot maintain this action as upon an implied promise in fact, for such a promise is implied from the understanding of the parties, inferred as a question of fact from their conduct and the surrounding circumstances; such acts and circumstances as show, according to the ordinary course of dealing and the common understanding of men, a mutual intent to contract. *Wisconsin Steel Co.* v. *Maryland Steel Co.,* 203 Fed. 403, 121 C. C. A. 507. It is never inferred against the express understanding of the parties. *Lunay* v. *Vantine,* 40 Vt. 501. The defendant's assent is necessary to such a promise. *Mathie* v. *Hancock,* 78 Vt. 414, 63 Atl. 143. The source of the obligation, as in express contracts, is the intention of the parties. *Bliss* v. *Hoyt's Est.,* 70 Vt. 534, 41 Atl. 1026. It is implied only when the facts warrant the interference of mutual expectation, the defendant expecting to pay for the service and the plaintiff performing it relying upon that understanding. *Parkhurst* v. *Krellinger,* 69 Vt. 375, 38 Atl. 67. It is implied only in this: It is inferred from the conduct of the parties instead of from their spoken words; or, in other words, the contract is evidenced by conduct instead of by words. Unless the party benefited has conducted himself in such a manner that his assent may fairly be inferred therefrom, he is not bound to pay. *Johnson* v. *B. & M. R. Co.,* 69 Vt. 521, 38 Atl. 267; *Bliss* v. *Hoyt's Est., supra.* Here the services sued for were performed in the face of the express and emphatic denial. of liability by the defendant.

Do the facts found bring the plaintiff within the other class of implied contracts? In case of constructive or quasi contracts the law infers the promise without reference to the intention of the party, and often against his express dissent, when he is under legal obligation paramount to his will, to perform some

duty. It was such an implied promise that is referred to in *Penniman et al.* v. *Patchin,* 5 Vt. 346, 353, cited by the plaintiff, wherein it was said: "The law does in many cases imply a promise against the express dissent of the party." An implied promise of this kind rests upon the equitable doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another. Keener, Quasi Con. 19. The application of this principle is illustrated by the action of assumpsit for money had and received, which lies when one has the money of another which he has no right to retain but which, *ex aequo et bono,* he should pay over to the other. In such case no promise need be proved because, from such relation between the parties, the law will imply a debt and give this action founded on the equity of the plaintiff's case, as it were on a contract,—*quasi ex contractu,*—and upon this debt founds the requisite undertaking to pay. Clark on Con. 757. Such is the case of one receiving money paid him by mistake, or of one obtaining money fraudulently. *Bliss* v. *Hoyt's Est., supra.*

In *Wojahn* v. *Nat. Bank of Oshkosh,* 144 Wis. 646, 129 N. W. 1068, it is said: "A quasi contract arises where there is a legal duty to respond in money which by legal fiction may be enforced as on an implied promise; but in such case there is no element of contract so called, but only the duty to which the law affixes a legal obligation of performance as in case of a promise between the parties." To the same effect is a recent case in Illinois: "A quasi or implied contract is one where liability exists from implication of law arising from facts and circumstances, independent of agreement or presumed intention, based on the doctrine of unjust enrichment; the implied agreement being one defining the duty of the defendant rather than his intention." *Board of Com'rs.* v. *Bloomington,* 253 Ill. 164, 97 N. E. 280, Ann. Cas. 1913 A. 471. The latter case contains a lucid discussion of the subject. The same doctrine is recognized in *Mathie* v. *Hancock,* 78 Vt. 414, 417, 63 Atl. 143. The distinction has been tersely stated in these words: "In the case of contracts the agreement defines the duty, while in case of quasi contracts the *duty* defines the contract." *Hertzog* v. *Hertzog,* 29 Pa. 465. See also *C. H. V. & T. R. Co.* v. *Gaffney,* 65 Ohio St. 104, 61 N. E. 152.

Applying these principles to the facts in this case it is evident that the plaintiff cannot recover. The same result is

29

reached whether the attempt by the defendant to rescind the sale is regarded as effectual or ineffectual. If effectual, then the horse was no longer his and confessedly no principle of equity and good conscience would demand that the law imply a contract for its keeping against his express dissent. If ineffectual, and for that reason the horse remained his, when the plaintiff knowing the circumstances under which the horse was left by the defendant outside his stable, saw fit to take charge of and care for it, he acted as a volunteer. It cannot be said that the horse was left in the plaintiff's possession so that a duty to care for it was cast upon him. *Mathie* v. *Hancock, supra.* To be sure the defendant had asked Spaulding to receive the horse back, but this request was coupled with a demand for the return of the purchase money and his request was denied.

The fact that the property is a live animal, in the absence of special circumstances raising a duty to care for it, does not change the situation. The plaintiff cannot be held liable on an implied contract to pay for that which he expressly declines to have done on his account, unless the law imposes upon him an obligation to do something which he declines to do, and which must be done to meet the legal requirement. There is no such obligation upon one to retain and preserve his property whether it be live animals or anything else. He may abandon or destroy it, if he pleases, *Keith* v. *De Bussigney et al.,* 179 Mass. 255, 60 N. E. 614; subject of course to prohibitions of the statute against cruelty to animals. The facts of this case do not disclose such necessity for the plaintiff's interference on grounds of humanity, or otherwise, as would authorize him to care for the horse at the defendant's expense against his protest. The general rule is as was said in *State* v. *St. Johnsbury,* 59 Vt. 332, 342, 10 Atl. 531, 535. ''One cannot thrust himself upon me and make me his debtor, whether I will or not.'' The plaintiff fails to bring himself within the exceptions to this rule. This being so he must be taken at the best to be a mere volunteer and so precluded from recovering. Keener, Quasi Con. 349; *Johnson* v. *B. & M. R. Co., supra.*

*Judgment affirmed.*