GEORGE C. UNDERHILL, RECEIVER OF THE COLUMBIAN MARBLE
COMPANY *v.* THE RUTLAND RAILROAD COMPANY.

February Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS and TAYLOR, JJ.

Opinion filed October 14, 1916.

*Action in Name of Person Having Legal Title—Receivers—In-
capacity to Sue—How Question Raised—Demurrer—Plea
in Bar—Waiver of Defect by Pleading General Issue—
Amendment in Supreme Court—Assignee of Corporation
or Person Claiming Under It—Nominal Parties—Contracts
Implied in Fact, and in Law—Unjust Enrichment—Un-
authorized Agent—Agreement to Lease, in Consideration
of Improvements Made—Breach Affecting Essence of Con-
tract—Demand for Performance Excused—Time for Per-
formance—Occupation as Tenant at Will or on Sufferance
—Result of Refusal to Lease Property—Availability of
Remedy.*

An action in a court of law for the enforcement of a right must be in
the name of the person having the legal title.

No exception to the foregoing rule exists in favor of a receiver, either
at common law or by statute in this state.

If the declaration discloses facts which constitute an incapacity
to sue on the part of the plaintiff, objection can be taken by
demurrer.

Where the incapacity of the plaintiff to sue is not apparent on the
face of the declaration, it must be taken advantage of by some
appropriate dilatory procedure or plea in bar, and the defect is
waived by pleading the general issue.

Incapacity to sue exists where there is some legal disability, such
as infancy, or lunacy, or a want of title in the plaintiff to the
character in which he sues.

Where a suit is improperly brought in the name of the receiver of a
corporation, the declaration alleges a promise to the corpora-
tion, and, in consideration thereof, a promise to the receiver,
and the case is tried as it would have been, if brought in the
name of the corporation, an amendment will be allowed in Supreme

Court, substituting the corporation as plaintiff, in place of the receiver.

A receiver of a foreign corporation is not an assignee of the corporation nor a person claiming under it, in the ordinary sense of the terms, or within the meaning of P. S. 760, 774, 776, and Sec. 13 of No. 59 of the Acts of 1915, providing that in default of the payment of an annual tax and procurement of a certificate from the secretary of state, no action in this state upon contracts made by the corporation in this state, shall be maintained by the corporation or by an assignee thereof, or by·a person claiming under such corporation or assignee.

A receiver of a corporation derives his authority and possessory rights from the court appointing him and not from the corporation; and his possession is the possession of the court by him as its officer.

The ordinary chancery receiver is not an assignee but a ministerial officer appointed by the court to take possession of and preserve the fund or property in litigation.

When a suit is brought in the name of the one having the legal title to meet the technical requirement of the law, the plaintiff is only a nominal party, having no power to control the suit.

When a suit is brought by a receiver of a corporation in the name of the corporation, the corporation does not even have the standing of a nominal party in an ordinary suit because no question can be made against the receiver regarding costs.

Contracts implied in fact are based upon an actual agreement of the parties, deduced by the trier from the conduct of the parties and the circumstances of the case. In such cases, all the elements essential to an express contract must be found.

A contract obligation implied in law may arise without there having been a promise, or any intention to enter into a contract, and even against an intention to the contrary.

One of the recognized grounds on which the law may imply an obligation of payment is found in the doctrine that one shall not be allowed to enrich himself unjustly at the expense of another.

Where the making of an agreement is within the power of the party sought to be charged, the fact that it was entered into by an agent without authority affords no reason for allowing such party to enrich himself at the expense of the other party to the contract.

Where the plaintiff performed certain work on defendant's premises upon the promise of the defendant to lease the premises to the plaintiff, it is not necessary that it should appear that the plaintiff's agent had authority to enter into the agreement, in order to enable the plaintiff to recover against the defendant for a breach of the agreement.

Where the plaintiff agreed to make certain improvements upon defendant's property, in lieu of rent, and defendant agreed to execute a twenty year lease of the property to the plaintiff, and plaintiff forthwith, with defendant's knowledge and consent, entered upon the property and started work upon the improvements, but defendant refused to deliver the lease for twenty years, the defendant could not refuse to execute the contract on its part, and so take the benefit of the improvements, without compensation to the plaintiff.

Where, in the above case, the defendant refused to deliver a twenty year lease of the premises to the plaintiff, it committed a breach so materially affecting the essence of the contract that it excused the plaintiff from further performance.

The offer of a lease for ten years by the defendant to the plaintiff, with a statement that the defendant would assent to nothing longer, excused a demand on the part of the plaintiff, if otherwise required.

Where, in such a case, the plaintiff remained in occupancy and continued to do work on the improvements, after the refusal of the defendant to give a twenty year lease of the property, but later abandoned the work, it cannot be said that the plaintiff thereby waived its claim to recover its expenditures.

*Held,* while there was no time fixed for the delivery of the lease for twenty years, by defendant to plaintiff, there was evidence from which the jury could have found that more than a reasonable time had elapsed for performance on the part of the defendant.

If the plaintiff continued in some sort of occupancy of the premises, after it ceased to be a prospective lessee, this might make it liable for use and occupation, as a tenant at will, or place it in the position of a tenant at sufferance, but would not defeat its right to recover for the benefit accruing to the defendant through its expenditures on the property under the relation which had existed.

Where the equity of redemption of the plaintiff in its real estate, which adjoined and was to be used in connection with the property

to be leased from the defendant, and which was essential to the use of the leased property, was foreclosed after the refusal of the defendant to give a twenty year lease, it will not be assumed that the foreclosure would have taken place as it did, if the refusal had not been given.

If the remedy sought by the plaintiff is available, the existence of other remedies is not material.

ASSUMPSIT brought by the plaintiff as receiver of the Columbian Marble Company. Plea, the general issue. Trial by jury at the September Term, 1914, Rutland County, *Slack,* J., presiding. At the close of the plaintiff's evidence, the court directed a verdict for the defendant. The plaintiff excepted. The opinion states the case.

*Marvelle C. Webber* and *Clarke C. Fitts* for the plaintiff.

Having accepted the benefit of the work done by the Marble Company, the defendant cannot keep the benefit and deny the authority to bestow it. *Phoenix Ld. Co.* v. *Exall,* 159 S. W. 474; *Livingston Mfg. Co.* v. *Rizzi Bros.,* 86 Vt. 419, 423; *Railway* v. *McCarthy,* 96 U. S. 258, 267; *Gray* v. *Otis,* 11 Vt. 628.

An appropriation by the principal of the avails of an agency, with knowledge of the facts, amounts to a ratification of what has been done by an unauthorized agent. *Smith* v. *Painey,* 32 Vt. 289; *Vt. Bap. Conv.* v. *Ladd,* 58 Vt. 95; *Lyman* v. *Norwich Univ.,* 28 Vt. 56; *Newell* v. *Hurlburt,* 2 Vt. 351; *McClure Bros.* v. *Briggs,* 58 Vt. 82; *Conant* v. *Bellows Falls,* 29 Vt. 263.

The law implies a contract to pay the Columbian Marble Company. *Paddock* v. *Kittridge,* 31 Vt. 378, 384; *Ives* v. *Hulet,* 12 Vt. 327; *Sumner* v. *Williams,* 8 Mass. 161; *Manning* v. *Leighton,* 65 Vt. 84, 97; *Blair* v. *Ellsworth,* 55 Vt. 417; *Fourchy* v. *Ellis,* 140 Fed. 149.

The objection that the receiver should have sued in the name of the corporation, not having been raised by demurrer or by plea in abatement, is waived. Having pleaded the general issue, the defendant admits the existence of the plaintiff and his capacity to sue. *Dohorty* v. *Madgett,* 58 Vt. 323; *Royce* v. *Vandeusen,* 49 Vt. 26; *Gustin* v. *Carpenter,* 51 Vt. 585; *Ewing* v. *King,* 169 Mass. 97, 100.

It is generally accepted that the court has power by express order to authorize a receiver to sue in his own name. Am. & Eng. Ency. of Law (1st ed.) tit. ''Receivers,'' pp. 231, 232 and cas. cit. in note 1; *Hardwick* v. *Hook,* 8 Ga. 354; *Leonard* v. *Storrs,* 31 Ala. 488; *Manlove* v. *Burger,* 38 Ind. 211; *Freeman* v. *Winchester,* 10 Smed. & M. (Miss.) 577; *King* v. *Cutts,* 27 Wis. 627; *Garver* v. *Kent,* 70 Ind. 428; *Davis* v. *Gray,* 16 Wall. 203; High on Receivers (3rd ed.) Sec. 688; Gluck & Becker on Receivers, (1st ed.) pp. 155, 156; *Hayes* v. *Brotzman,* 46 Md. 519; *Wilkinson* v. *Rutherford,* 49 N. J. L. 241, 8 Atl. 507; *Nathan* v. *Whitlock,* 9 Paige (N. Y.) 152; *Gray* v. *Lewis,* 94 N. C. 392; *Evans* v. *Pease,* 42 Atl. 506; *Gilbert* v. *Heurston,* 82 N. W. 655, 79 Am. St. Rep. 486; *Howarth* v. *Lombard,* 175 Mass. 570; *Iddings* v. *Bruen,* 4 Sandf. Ch. 417; *Tillinghast* v. *Champlin,* 4 R. I. 173, 67 Am. Dec. 510; *Wray* v. *Jamison,* 10 Humphr. (Tenn.) 186.

The receiver is not an assignee of, nor a person claiming under the corporation, and is not within the prohibition of P. S. 776. *New York P. & O. R. Co.* v. *New York L. E. & W. R. Co.,* 58 Fed. 268; *Fosdick* v. *Schall,* 99 U. S. 251; *Union Nat. Bank* v. *Bank of Kansas City,* 136 U. S. 223, 34 L. ed. 341; *Quincy, etc., R. Co.* v. *Humphreys,* 145 U. S. 82, 36 L. ed. 632.

*E. W. Lawrence* and *T. W. Moloney* for the defendant.

The action cannot be maintained in the receiver's name. *Murtey* v. *Allen,* 71 Vt. 377; *King* v. *Cochran,* 72 Vt. 107, 76 Vt. 141; *Fish* v. *Olin,* 76 Vt. 120; *Homer* v. *Barr Pumping Engine Co.,* 180 Mass. 163; *Fort Payne Coal & Iron Co.* v. *Webster,* 163 Mass. 134; *Battles* v. *Davis,* 66 N. C. 252; *Hayward* v. *Lesson,* 176 Mass. 310.

As the Columbian Marble Company, a foreign corporation, had not complied with the laws of this state, plaintiff cannot recover. P. S. 760, 774, 776; *Insurance Co.* v. *Wright & Son,* 55 Vt. 526; *Library Bureau* v. *Hooker, Corser, Mitchell & Co.,* 84 Vt. 530.

Mr. Jarvis had no authority to make the alleged agreement for the defendant. His office as general manager raises no presumption that he had such authority. *Lyndon Mill Co.* v. *The Lyndon Institute,* 63 Vt. 581; *Stark Bank* v. *U. S. Pottery*

*Co.,* 34 Vt. 144; *Hodges* v. *R. & B. R. R. Co.,* 29 Vt. 220; Cook on Corporations, Sec. 716.

The expenditures were made pending negotiations for a lease, and not pursuant to an agreement for a lease. An agreement to pay for work done by the Marble Company on defendant's land cannot be implied from any act of defendant. So long as defendant allowed the Marble Company to enjoy quiet possession of the land, it could not abandon the land and sue for the expenditures made, even if the defendant declined to execute a twenty year lease. The Marble Company, if it had an agreement for a twenty year lease was not dependent upon the execution of a written agreement in order to continue to occupy the land. *Congdon* v. *Darcy,* 46 Vt. 478; *Philbrook* v. *Balknap,* 6 Vt. 383; *Shaw* v. *Shaw,* 6 Vt. 69; *Mack* v. *Bragg,* 30 Vt. 571; *Miller* v. *Tobie,* 41 N. H. 84; *Brito* v. *Fauer,* 25 S. W. 445; Elliott on Contracts, Secs. 2298, 2299.

MUNSON, C. J. The plaintiff sues as receiver of the Columbian Marble Company. The original declaration consisted of the common counts, and declared upon a promise to the plaintiff. There is an amended declaration which declares upon a promise to pay the Columbian Marble Company, and in consideration thereof a promise to the plaintiff as receiver. At the conclusion of the evidence submitted by the plaintiff on the question of liability, the defendant moved for the direction of a verdict, and included in the grounds of its motion the point that the title to the claimed cause of action had not been shown to be in the receiver. The plaintiff claims that this objection should have been raised by demurrer or by plea in abatement, and was waived by pleading the general issue.

It is an established principal of the common law, and the settled doctrine of this state, that an action in a court of law for the enforcement of a right must be in the name of the person having the legal title. *Probate Court* v. *Hull,* 58 Vt. 306, 3 Atl. 472; *Murtey* v. *Allen,* 71 Vt. 377, 45 Atl. 752, 76 Am. St. Rep. 779. No exception exists at common law in favor of a receiver, and we have no statute creating one. *Murtey* v. *Allen, supra.; Sparks* v. *Estabrooks,* 72 Vt. 101, 47 Atl. 394. Actions brought here by receivers appointed in another state are sustained on the ground that the statutes of their state give

them the legal title. *King* v. *Cochran*, 76 Vt. 141, 56 Atl. 667, 104 Am. St. Rep. 922..

In support of his claim of waiver the plaintiff cites certain of our cases which hold that where it is claimed that there is no such person as the plaintiff named, or that the plaintiff has sued by the wrong name, or that the plaintiff, being a married woman, has sued by her next friend, or without having joined her husband, the ground of objection is matter of abatement, to be taken advantage of by a plea in abatement or in bar. *Boston Type Foundry* v. *Spooner*, 5 Vt. 93; *Royce* v. *Vandeusen*, 49 Vt. 26; *Gustin* v. *Carpenter*, 51 Vt. 585; *Dohorty* v. *Madgett*, 58 Vt. 323, 2 Atl. 115. But if the declaration discloses the facts which constitute the incapacity, the objection can doubtless be taken by demurrer. *Alexander* v. *School District*, 62 Vt. 273, 19 Atl. 995.

The defendant asserts that the declaration is so framed as not to be demurrable, and that this entitled it to make its objection by a motion for a directed verdict. If the question raised concerning the plaintiff's right to sue is of the nature claimed by the plaintiff, and is governed by the authorities relied upon, the defendant's claim is unsound. When defects like those considered in the above cases are not apparent on the face of the declaration they may be taken advantage of by a plea in abatement. They must be taken advantage of by some appropriate dilatory procedure or plea in bar, for the purport of the rule is that such defects are waived by pleading the general issue.

But the defendant claims that whether the plaintiff has alleged legal title or not, he cannot recover without showing that he has it. This raises the question whether the defect claimed here is within the rule of waiver which the plaintiff relies on. The nature of the inquiry is indicated in what is said in *Ward* v. *Petrie*, 157 N. Y. 301, 51 N. E. 1002, 68 Am. St. Rep. 790. There the court distinguishes between the capacity to sue and a cause of action, and says that "incapacity to sue exists where there is some legal disability, such as infancy or lunacy or a want of title in the plaintiff to the character in which he sues." The same distinction is made in our own case of *Royce* v. *Vandeusen*, cited above. This limitation as regards title presents the very point of the defendant's objection, for it is manifest that the shortage here is not a want of title in

the plaintiff to the character in which he sues, but a want of title to the thing for which he sues.

There are cases not cited by the plaintiff which perhaps lend some support to his claim of waiver. *Lanier* v. *Trigg,* 7 Smedes & M. (Miss.) 53, 45 Am. Dec. 293; *Meyer* v. *Barth,* 97 Wis. 352, 72 N. W. 748, 65 Am. St. Rep. 124; *Childress* v. *Emory,* 8 Wheat. 642, 5 L. ed. 705; *United States* v. *422 Casks of Wine,* 1 Pet. 547, 7 L. ed. 257. Without pursuing the inquiry suggested by these cases, we take up the consideration of cases which hold that the necessary party can be brought in by amendment.

In *Power* v. *Crogan,* 232 Pa. St. 387, 81 Atl. 416, one who was administrator of an estate, and as such could maintain ejectment, brought the suit under an unauthorized appointment as receiver of the estate. It was considered that where the proper individual was on the record as plaintiff, but was erroneously designated as regards the capacity in which he was entitled to sue, and a change of parties would not involve a change of the cause of action, the court could properly permit an amendment substituting the plaintiff in his proper capacity. The court said that if the plaintiff should recover he would hold the property for whomsoever was entitled, whether the plaintiff was designated as receiver or as administrator.

In *Chandler* v. *Frost,* 88 Ill. 559, it was said that the amendment was authorized by the practice act then in force, but the reasoning of the court is pertinent to the inquiry as presented here. It was said that the object of the suit, whether prosecuted by the corporation or the receiver, was to add the amount due from the defendant to the cash assests of the corporation, and that any defence that could be interposed against a receiver lawfully suing could be interposed against the corporation lawfully suing.

In *Bigelow* v. *Draper,* 6 N. D. 152, 69 N. W. 570, the action was brought by and in the name of the receivers on behalf of the corporation, and the amendment was not made until after the verdict; but the court considered that the corporation had practically been a party to the suit from its inception, and that the amendment simply brought it formally upon the record. It was said that the defendant had been fully heard regarding all the matters on which it was entitled to be heard, and could not possibly be prejudiced by the amendment. But this action

was taken under a statute which the court characterized as very broad in its provisions.

There are several decisions on this subject in Massachusetts. In *Wilson* v. *Welch,* 157 Mass. 77, 31 N. E. 712, the court recognized distinctly that the receiver of a corporation appointed by a court of equity cannot bring suits in his own name to recover property of the corporation never in his possession, unless authorized to do so by statute, or by a decree of a competent court, or unless the title of the property has been conveyed to him, but nevertheless held that if there is no other objection to the maintenance of a bill in equity, it may be amended by substituting the name of the corporation for that of the receiver. In *East Tenn. Land Co.* v. *Leeson,* 178 Mass. 206, 59 N. E. 639, it was said: "The suit is being prosecuted for those who, by decree of the court appointing the receiver, are entitled to the proceeds, and for whose benefit it was originally brought. The substitution of the company for the receiver as the party plaintiff was made to comply with the technicalities of our procedure." In *Campbell* v. *Barr, etc., Co.,* 182 Mass. 304, 65 N. E. 396, no question was raised as to the power of amendment, but the court remarked that since a former decision amendments had been allowed substituting the corporation itself for the receiver as the party plaintiff, and that judgment on the verdict for the plaintiff had been ordered and entered. The question raised was whether, after the substitution, the court below could order judgment on the verdict. The court below had found: "That from the time of the appointment of the receiver he was the only person who could bind the corporation, that the amendment had not changed the issue tried or any question of evidence raised at the trial, and that the case had been fully and fairly tried upon the merits, and that there were no grounds for a new trial." The court said that these circumstances were conclusive of the right of the court below to order and enter judgment upon the verdict, notwithstanding the change in parties, and that this could be done even after exceptions had been sustained on the ground that the action could not be maintained in the name of the receiver.

We have seen nothing to indicate that the rule prevailing in Massachusetts is based upon any statutory authority. The court supports and justifies the rule by a line of reasoning

based on the relation which the receiver sustains to the estate committed to his keeping. The case before us is a proper one for the application of this rule. The plaintiff sues as receiver of the Columbian Marble Company. The amended declaration declares upon a promise to the Columbian Marble Company, and in consideration thereof a promise to the plaintiff as receiver. The case has been tried as it would have been if properly brought. The receiver would have been the one to prosecute the suit if brought in the name of the Company. He was in fact the only one who could enforce the right. He is the one to receive, hold and account for the damages recovered, in whichever name the suit is prosecuted. As regards the purpose and management of the suit he is the same as the Company.

The defendant claims that the suit is not maintainable because of a failure of the Columbian Marble Company to comply with the statutory provisions which require of foreign corporations the procurement of a certificate from the secretary of state and the payment of an annual tax, and provide that in default of a compliance with such requirements no action in this state upon contracts made by the corporation in this state shall be maintained by the corporation, or by an assignee of the corporation, or by any person claiming under such assignee or corporation. P. S. 760, 774, 776, Acts 1915, No. 59, §13. The defendant contends that the plaintiff is an assignee of the Marble Company and a person claiming under it, and assumes that the action could not have been brought in the name of the corporation and was brought in the receiver's name to escape the effect of the statute. So the question of permitting the amendment cannot be disposed of without considering the source of the receiver's right to the assets of the corporation, and the relation he will sustain to the suit if the writ is amended as proposed.

We think the receiver is not an assignee of the corporation nor a person claiming under it, in the ordinary sense of the terms, or within the meaning of the statute,—and so not within the prohibition. The receiver derives his authority and possessory rights in the property from the court appointing him, and not from any act of the corporation. *Murtey* v. *Allen,* 71 Vt. 377, 45 Atl. 752, 76 Am. St. Rep. 779. His possession of the property is the possession of the court by him as its

officer. *Thompson* v. *Phoenix Ins. Co.*, 136 U. S. 287, 34 L. ed. 408, 10 Sup. Ct. 1019. The ordinary chancery receiver is not an assignee, but a ministerial officer appointed by the court to take possession of and preserve the fund or property in litigation. *Quincy, etc., R. R. Co.* v. *Humphreys*, 145 U. S. 82, 36 L. ed. 632, 12 Sup. Ct. 787; *New York, etc., R. R. Co.* v. *New York, etc., R. R. Co.* (C. C.) 58 Fed. 268. If the defendant had been called upon in the first instance to answer to this claim in a suit in which the corporation was named as the plaintiff, it would not have been a suit brought by the corporation, but a suit brought in the name of the corporation by one whose rights therein were independent of the legal title. When a suit is brought in the name of the one having the legal title to meet the technical requirement of our law, the plaintiff is but a nominal party, without power to control the suit. When the receiver of a corporation sues in its name, the corporation does not have even the standing of a nominal party in an ordinary suit, for no question can be made against the receiver regarding costs. So the question of amendment is not involved in the statutory provision affecting the right to maintain an action. It may be said, further, that this suit is primarily, and perhaps wholly, for the benefit of the creditors, who are in no way within the condemnation of the statute.

The court directed a verdict for the defendant, and it becomes necessary to state the case shown by the plaintiff's evidence. The Columbian Marble Company had an option upon a marble plant consisting of a mill yard and mills adjoining the defendant's right of way, and contemplated an enlargement of the mill yard and the building of more mills. There was an old dock on the defendant's right of way which had been used as a loading dock and was reached by a side track running parallel to the dock. About the first of August, 1909, before the Columbian Marble Company was organized, and while the plaintiff Underhill was acting in the interest of its promoters, Underhill told Jarvis, the defendant's general manager, of the purpose to organize a company so named to operate this plant, and was told by Jarvis that the Railroad Company owned the land on which the dock and side track were situated, and that it would be necessary to lease the same before any use could be made of it; and was also told that the side track was too near the dock, and that cars could not be put on it until the

dock was set back. At this interview Jarvis named a large sum as an annual rental, and negotiations were subsequently had in which Underhill produced and explained to Jarvis plans which showed in detail the work it was proposed to do. This included the extension of the siding and the building of a new dock and dock wall the entire length of the property; the excavation and removal of a large amount of embankment, a considerable part of which was claimed to be and was on defendant's right of way; and the erection of a marble mill and finishing shop, which as then located and afterwards built turned out to be partly on defendant's land. Underhill then proposed to take a twenty years' lease and make the improvements on the right of way in lieu of rent. Jarvis agreed to this, and said he would have the lease drawn; and a day or two later Underhill asked Jarvis to hasten the drawing, as he wanted to get the work started, and Jarvis told him to go on with the work—it would be all right. Underhill commenced work on defendant's right of way before the middle of August, and continued it about five months. The work done constituted a large part of what was to be done on the right of way. Part of it was done by the promoters before the corporation was organized, but the principal part was done after the organization. Jarvis knew of work being done during all the time, and defendant's engineer was present while some of the work was being done on the switch tracks, and gave some directions as to the location of the side track with reference to the main line and the dock. Jarvis testified that he told Underhill that he could do the work at his own risk or that of the Columbian Marble Company; that he had no authority to give a lease for over a year, but could only recommend it; that the president was the only one who had authority to give a lease for a longer time. Underhill denied that Jarvis said this. It appeared that Jarvis told the president "what was in the air" and that he, Jarvis, would approve a ten year lease. About the middle of February, 1910, Jarvis mailed to the Columbian Marble Company a lease to the Company of the right of way limited to a period of ten years, saying in an accompanying letter that the railroad officials would not consent to a longer lease. The consideration named was a nominal rental of one dollar per year, and the making of certain improvements upon the defendant's right of way as stated in the lease. Jarvis also mailed to the Company a sepa-

rate lease of the side track. Plaintiff refused to accept these leases as not in accordance with the terms of the agreement.

The Columbian Marble Company began to be financially embarrassed sometime in January, 1910; was out of money about the first, but raised some through its president and kept on a little longer; was out of money again in the summer and continued so until November, when the creditors instituted a suit and Underhill was appointed receiver. Shortly before this appointment, all rights of the Columbian Marble Company in the land adjacent to the defendant's right of way, other than the strip of land which was the subject of the negotiations for a lease to the Company, had been foreclosed, and had gone into the possession of the receiver of the Columbian Marble Quarrying Company. In 1912, Jarvis, as general manager of the defendant, executed and delivered to the Green Mountain Marble Company a lease of the same strip of land for which Underhill had negotiated and upon which was done the work for which the plaintiff seeks to recover.

The brief of the defendant proceeds mainly, if not wholly, upon the theory that the suit is to recover damages for the breach of an implied contract. It contains no distinct recognition of the different uses to which this term is applied. It is argued that there is no evidence tending to show that Jarvis had authority to make a twenty year lease, and none tending to show that Underhill could bind either the promoter or the Columbian Marble Company to accept such a lease; none tending to show that any agreement was reached by a meeting of the minds of the persons conducting the negotiations; none tending to show that the defendant intended to defraud the Marble Company, or did any act from which a promise of payment can be implied. It is said that the Marble Company abandoned the work from lack of means to continue it, and acknowledged itself incapable of performance on its part, and so was the first in default; that the Company has lost all right and title to the adjoining property in connection with which this property was to be used, and without which no use of this can be made; that the tendering of a lease for a ten year term had no connection with the action taken by the Marble Company, and that if it had an oral agreement for a twenty year lease on the strength of which its expenditures were made, it

could have continued its occupancy and maintained its right without having the lease.

The plaintiff says that these arguments do not meet his claim; that he is not suing for a breach of contract, but to recover the consideration paid the defendant for a lease which it failed to give; and that in the circumstances disclosed by his evidence the law implies a contract to return the consideration or its value.

There is a plain distinction between contracts implied in fact and contracts implied in law, both of which are spoken of in general terms as implied contracts. The distinction would be better preserved by designating implied contracts of the latter class as *quasi* contracts. They are sometimes spoken of as fictitious contracts. Wald's Pollock on Con. 10. They are in truth only fictions invented for the purpose of enforcing legal duties where no actual contract exists, either express or implied. 15 Ency. Law 1078, (2d ed.). Contracts implied in fact are based upon an actual agreement of the parties, deduced by the trier from the conduct of the parties and the circumstances of the case. In cases of this class all the elements essential to an express contract must be found. But contract obligations implied in law may arise without there having been a promise, or any intention to enter into a contract, and even against an intention to the contrary. *Bliss* v. *Hoyt,* 70 Vt. 534, 41 Atl. 1026. One of the recognized grounds on which the law may imply an obligation of payment is found in the doctrine that one shall not be allowed to enrich himself unjustly at the expense of another. *Mathie* v. *Hancock,* 78 Vt. 414, 63 Atl. 143; *Morse* v. *Kenney,* 87 Vt. 445, 89 Atl. 865.

There is no suggestion in this case that the agreement which the general manager is claimed to have made was not within the contracting power of the corporation. The making of the agreement being within the power of the party sought to be charged, the fact that it was entered into by an agent without authority will not prevent an application of this doctrine. The failure of the plaintiff to ascertain the extent of the agent's authority affords no reason for saying that the defendant shall be allowed to enrich itself at the plaintiff's expense. Keener, Quasi Contracts, 115. A mistake as to the existence of a contract which failed of validity because of a lack of authority in the agent making it, is a recognized ground

for granting this relief. In *Van Deusen* v. *Blum,* 18 Pick. (Mass.) 229, 29 Am. Dec. 582, the contract was for a purpose within the scope of the partnership business, and was executed under seal in the name of the firm by one of the partners. There was no evidence of a previous authority or subsequent ratification. The court said: ''The plaintiffs undertook to execute a contract between themselves and the company. But there being no such contract in existence, they are left to resort to their equitable claim for their labor and materials. So far as these benefited the company, the plaintiffs are entitled to recover against them.''

It is said there is no evidence tending to show that Underhill had authority to enter into such an agreement as is claimed to have been made. It is not necessary to inquire particularly regarding this, for no such evidence was needed as a basis for this relief. The money of the promoter and the corporation was furnished Underhill for use in the making of these improvements on the defendant's land to fit it for the use of the Marble Company, and was expended upon it to the knowledge, and to some extent under the direction, of defendant's agents who had charge of the property; and these facts point unmistakably to the conclusion that the Company was to acquire some rights in the property of the defendant through the action of Underhill. The work was not done voluntarily and without expectation of compensation, but was induced by the promise of the defendant. Having thus brought about the expenditure, the defendant cannot refuse to execute the contract on its part, and claim that it takes the benefit of the improvements from necessity, because of its ownership, and not by way of acceptance.

It is obvious that the claims that the minds of the persons conducting the negotiations did not meet, that no agreement was actually concluded, that nothing was done by the defendant from which a promise of payment could be implied, and that no fraud has been practiced on the plaintiff,—if any or all were established,—would not defeat a recovery on the ground relied upon.

The defendant claims that the failure to tender a twenty year lease did not cause the abandonment of the work, and cannot be made the basis of a recovery for the work done. It is said that the Marble Company stopped work because of a

want of means to continue it, and so was the first in default. But the case which the plaintiff's evidence tends to establish does not justify this argument. After work on an extensive scale was suspended, the Company raised some more money, and kept a team and a few men at work until ·after the lease was received. There was nothing in this that amounted to a waiver of performance by the defendant; and when the defendant refused a twenty year lease it committed a breach so materially affecting the essence of the contract that it excused the Company from further performance. The defendant argues that there was no demand for a twenty year lease, and no effort made to procure one, and therefore no refusal. But the sending of a ten year lease, with a statement that the Company would assent to nothing longer, excused a demand, if otherwise required.

But the defendant argues that if the lease sent and the letter enclosing it would have justified the Marble Company in immediately stopping work and vacating the land and suing for the expenditures it had then made, it waived this right by remaining in occupancy and continuing to do work, and could not afterwards abandon the land and assert a right to recover its expenditures on the ground that the defendant's action was a repudiation of the contract. We think the Company cannot be said to have waived its claim. The defendant put the plaintiff in possession under a promise to execute a lease. The relation contemplated was that of lessor and lessee. The agreement was for a fixed term, with rent payable in improvements. The proposed arrangement failed through the fault of the intended lessor. When the defendant tendered a lease that was not in accordance with the contract and the Company refused to accept it, the contract for a lease was at an end. No time was fixed for the delivery of the lease; but there was certainly evidence from which the jury could have found that more than a reasonable time had elapsed for performance on the part of the defendant. If the Company continued in some kind of occupancy after it ceased to be a prospective lessee, this might make it liable for use and occupation as a tenant at will, or place it in the position of a tenant at sufferance, but would not defeat its right to recover for the benefit accruing to the defendant through its expenditures on the property under the relation which had existed.

The defendant claims that the Company's loss of the property which was to be used in connection with the leased property, and was essential to its use in the contemplation of both parties, has rendered performance by the Company impossible, and that this impossibility has excused the defendant from performance. It is not necessary to inquire regarding the legal conclusion involved in this argument as applied to the ground of recovery relied upon. The letter enclosing the ten year lease was dated and sent about the middle of February, 1910. The foreclosure proceeding referred to was commenced in June, 1910, and the equity of redemption expired November 8th. But the defendant argues that ''everything would have happened as it subsequently did, if that letter had never been sent.'' The law makes no such assumption. In fact, the discovery that the company was to have in return for its large expenditure a lease for ten years instead of twenty may have had a distinct tendency to prevent the procurement of further funds.

The defendant says it has not evicted the Columbian Marble Company, and that for any action it has taken that Company might still be in possession of the property, and so not entitled to recover for its expenditures. But such an occupancy would be terminable at the will of the owner, and would not be the possession provided for by the agreement and enjoyed while the agreement was in existence. It is said, however, that if the Marble Company had an agreement for a twenty year lease it was not dependent upon the execution of a written agreement to maintain its occupancy, but could have had protection in equity against an attempted ejectment until its improvements were paid for. But the question is not whether other remedies exist, but whether the remedy sought here is available; and we have seen that it is.

There are a number of cases which hold that one making improvements while in the possession of land under an oral contract of purchase or an oral agreement to lease, cannot recover in an action at law on account of his expenditures, because the improvements are not intended or made for the use of the vendor or lessor, but for the benefit of the vendee or lessee. Mr. Keener, in his work on Quasi Contracts, at page 363, reviews this line of cases, and considers that there is no reason for denying a recovery at law in such cases. However this may be, it is clear that the cases referred to are not con-

trolling here.   These improvements were not something which
the lessee could make or not at its pleasure, and with which the
lessor was in no way concerned.   They were required by the
contract, and were made for the lessor's benefit in the first in-
stance, and would accrue to the lessee's benefit only through
the lessor's fulfillment of the contract.   The company's money
went as rent payable in work, and its expenditure was required
in advance to fit the property for earning the rent.

*Judgment reversed pro forma and cause remanded.*